**ANGELINA COUNTY LUMBER CO.**

**v.**

**McKNIGHT et al.**

No. 3117.

Court of Civil Appeals of Texas.

Waco.

Feb. 11, 1954.

Rehearing Denied March 4, 1954.

K. W. Denman, Lufkin, for appellant.

R. C. Musslewhite, Curtis W. Fenley, Lufkin, for appellees.

McDONALD, Chief Justice.

This is a boundary dispute case between adjoining owners of land in the Joseph Durst Survey in Angelina County. Appellant Lumber Company owns a 548-acre tract, and appellee McKnight owns a 615-acre tract, which adjoins appellant's tract on the northwest. Appellant and appellees hold under common source of title, appellant's chain of title being the senior.

It is believed that the schematic diagram below will aid in an understanding of this case. It is not a part of the rec-

ord, is not constructed to scale; but is inserted for the purpose of illustration only. Appellant contends that the line A–B on the diagram is the true location of the boundary line while appellee contends that the line C–D is the true location of the line.

The controlling question for determination by this court, therefore, is whether or not there was sufficient competent evidence to sustain the jury's finding that the true line between appellant's and appellee's property was line C–D as shown on the schematic diagram.

Schematic Diagram Joseph Durst Headright

Trial was to a jury, which found the line to be the line C–D on the diagram, as contended for by appellee. Judgment was upon the verdict and decreed to appellee the approximately 90-acre tract in the disputed area. Appellant appeals upon 31 points.

Points 1 through 29 present the following contentions: (1) That the line between appellant's and appellee's property is located by the undisputed evidence, as a matter of law, on the line A–B (diagram), as contended for by appellant. (2) That the jury's finding is against all the evidence of probative value. (3) That the original grantors of both tracts intended the line to be as contended for by appellant. (4) That admission of testimony as to the railroad iron found in the Tindle field and the wagon thimble at the north end of the boundary line contended for by appellee was error materially injurious to the rights of appellant.

In connection with the above appellant earnestly urges that testimony of the witness surveyor Spearey is discredited testimony and should not be considered because he varied certain portions of his testimony from that testified to on a previous trial of this cause.

A review of the record is necessary.

Both appellant and appellee offered a surveyor witness, who had made surveys in an attempt to locate the true boundary line. Surveyor Spearey testified for the appellee and fixed the true line between Points C and D on the diagram. Surveyor Collins testified for appellant and fixed the true boundary line represented here between points A and B on the diagram.

The witness Roy Sanders testified that in 1923 he and appellee McKnight purchased from the Fisher family (original owners of the Joseph Durst Survey) the timber on the M. A. Fisher tract (now appellee's property); that they had a man named Goodwin to blaze the line between the Harrison (out of which appellant's property is carved) and the Fisher tracts; that he and appellee had a surveyor named Gibson survey the line between the Harrison tract (out of which appellant's property is carved) and the M. A. Fisher (now appellee's property), and that that survey went to a railroad iron 30 steps out in the Tindle field, which was fixed as the northwest corner of the Harrison tract (out of which appellant's property is carved); that the line as run by Gibson correspond-

ed: to the line as blazed by Goodwin; that he and appellee proceeded to cut the timber to this line; that they purchased the timber again on this tract and cut to this line, and that on neither occasion was the question ever raised as to the cutting of the timber down to said line.

C. W. Fisher, Jr., grandson of Green Fisher, who settled on the Joseph Durst Survey, testified that in 1915 his father pointed out to him the northwest corner of the Joseph Durst Survey; that his father also pointed out to him the northeast corner of the Joseph Durst Survey, and that he had in turn pointed out these two corners to the appellee McKnight.

The witness Ben Wilson testified that in about 1910 he and his father purchased the W. T. Wilson Survey, which lies northeast of the Joseph Durst Survey; that they located a corner on the southeast boundary of the Wilson Survey and that corner is a common corner with the northeast corner of the Joseph Durst Survey, and that he and a surveyor surveyed the ground and found same at a pin oak marked with an "X" and two hacks above. The fieldnotes of the Joseph Durst Survey called for a pin oak as above described at the northeast corner.

Frank Spearey, appellee's surveyor, testified he surveyed the lands in question and fixed the boundary at points represented by C–D on the schematic diagram. He located the southeast corner of the Joseph Durst Survey (as shown on his map which was introduced in evidence and which is similar to the schematic diagram), and from there located Point C as the southwest corner of appellant's land. He found hack markings on the line C–D. He found no hack markings on the line claimed by appellant. He blocked a hickory off where he placed the south line of the Joseph Durst Survey and counted about 100 rings from a hack scar. He said that in his opinion it was marked by the original surveyor of the Joseph Durst Headright. He testified that the finding of the railroad iron and the wagon thimble at Points C–D did not change the location

where he had placed the northwest boundary of appellant's property in the first trial of this case, and that the railroad iron and wagon thimble were found within 9/10 of a vara at one point and 2 varas at another point of where he located the line. C–D on the first trial. He blocked a blazed hickory at the line established by him as the northwest line of appellant's property and counted approximately 54 rings from the blaze. Appellant's tract was surveyed in 1898.

(Trees, when hacked or blazed, have a deep cut mark into the bark and outer ring. Trees normally put on one ring per year. Surveyors and woodsmen are able to take a section from a tree and by counting the rings from the outside back to an apparent blaze or hack mark, tell approximately how many years have elapsed since the hack mark was made. Rainfall or drouth of course vary to some extent the number of rings that a tree will acquire; that is to say, two rings in an extremely wet year and no rings at all in an extremely dry year; however, the overall average generally is one ring per year.)

Appellee McKnight testified that the corner that Spearey started from on his survey of the Joseph Durst Survey is the recognized corner, and that C. W. Fisher had pointed the corner out to him as the corner his father had pointed out to him as being the recognized corner. Appellee McKnight testified that he did not know of the existence of the railroad iron and the wagon thimble when Spearey set the boundary line in the 1949 survey and prior to the first trial; that upon learning of their existence he looked for them and found them.

Appellee McKnight testified that a surveyor named Gibson worked for the appellant Lumber Company and surveyed the disputed boundary line and placed same on the same line that Spearey had run, rather than on the line appellant's surveyor Collins testified he placed the line on.

Appellee McKnight testified that one Ben Brewer, now deceased, told him after the first trial but before the second trial

that he had been a member of a surveying party composed of Dr. C. W. Fisher, J. A. Young and Frank Goodwin, in surveying the line between the Harrison tract (out of which appellant's property is carved) and the M. A. Fisher tract (now appellee's property), and that they had set a railroad iron in Tindle's field for one corner of the Harrison line and a wagon thimble for the other corner. Mr. Brewer pointed out to McKnight approximately where these had been set and McKnight, upon digging for them, found them.

The witness McKinnon testified about going with McKnight to look for the railroad iron and wagon thimble; that they dug them up together and both appeared to have been buried for a long time.

Surveyor Collins, who testified for appellant, testified that he made a very comprehensive survey and placed the disputed boundary along the line A–B (see diagram). He testified at length as to where he ran his lines and why he so ran them. He further testified that he did not know where the original surveyor of the Joseph Durst had started and that he did not know whether he followed his footsteps in running the base line of such League or not. Notwithstanding the above testimony, he ran the survey line of the Harrison 715 acres out of which appellant's property was carved and placed the true line between appellee's and appellant's property at line A–B (see diagram).

It is true that there is presented a conflict of evidence in the case at bar. However, submission of the issues to the jury, one inquiring if they found the true line to be that contended for by appellant and another issue inquiring if they found the true line to be that contended for by the appellee, was in recognition of this conflict; and the jury, by their answers, accepted the appellee's evidence and rejected the appellant's evidence. It is further true that there are many inconsistencies in the field notes of the lands under examination. That, however, is frequently the case, especially in lands originally surveyed many years ago, and is one circumstance which gives rise to

the rule that almost any kind of evidence is admissible which tends to aid us in tracing the true footsteps of the original surveyor.

■ We believe that the evidence sustains the jury's finding. C. W. Fisher, Sr. pointed out the recognized northwest corner of the Joseph Durst League to his son, he having known the original landmark located there. His son, C. W. Fisher, Jr. pointed out the same corner to Mr. McKnight, who in turn pointed out such corner to the surveyor Spearey. Mr. Spearey began his survey at such recognized corner. Mr. Spearey ran the base line as called for in the patent of the Joseph Durst Survey and set a stake at practically the identical course and distance for the northeast corner. The bearing trees were gone but there was an old fence row which remained. Spearey then ran on a course of S. 45 W. and found an old post oak with old marks on this line. By reversing the call and running N. 45 E. the old corner was found, and C. W. Fisher, Sr. pointed it out as being the northeast corner of the League, which had been recognized for years. Furthermore, there was no evidence contradicting appellee McKnight's testimony that he knew one of the original bearing trees, the pin oak, was at the exact corner in 1915. The witness Ben T. Wilson confirmed the location of the pin oak in 1910 when he helped survey the Wilson tract. Mr. Spearey found old marked trees all along his line and confirmed the time of marking by blocking them. The approximate time of marking corresponds with both the date of the original survey of the Joseph Durst Headright and of the Harrison tract (out of which appellant's land was carved).

■■ We hold that the testimony concerning the railroad iron found in the Tindle field and the wagon thimble at the north end of the boundary line contended for by appellee was not error. It is a settled rule that after many years have passed and time has destroyed evidence left by the original surveyor, necessity requires that we resort to almost *any* evidence which would tend to establish the place of the original footsteps, which meets the require-

ment that it is the best evidence of which the case is susceptible. Finberg v. Gilbert, 104 Tex. 539; Taylor v. Higgins Oil & Fuel Co., Tex.Civ.App., 2 S.W.2d 288; State of Texas v. Gulf Oil Corporation, Tex.Civ.App., 264 S.W.2d 743.

We do not agree with the contention of appellant to the effect that the testimony of the surveyor Spearey is discredited and should not be considered. Spearey placed his line on the second trial within %10 of a vara at one point and within 2 varas at another point as he did on the other trial. The finding of the monuments which had been placed by previous surveyors of this same line tends to strengthen Spearey's testimony rather than to discredit it.

Our Supreme Court announced in Farley v. Deslonde, 58 Tex. 588: "As to what are boundaries, is a question of law for the determination of the Court; as to where the boundaries are upon the ground, is a question of fact to be determined by the jury from the evidence."

We believe that appellant's theory and case was fully developed before the jury, as was appellee's theory and case. The jury believed the appellee and his witnesses and placed the disputed boundary line at the point contended for by appellee. We believe that the evidence amply sustains this finding, and overrule appellant's contentions in this regard.

Appellant has further contended that the opinion on the previous appeal of this case constitutes the law of the case and fixes as a matter of law the boundary line between appellant's and appellee's property. This contention is overruled. There is no showing that the second appeal does not involve different witnesses, different evidence, or even a different surveyor in behalf of the appellant. Further, this court has considered very carefully the evidence in the case at bar and believes the conclusions arrived at by this court to be proper in this case.

Appellant contends in Points 30 and 31 that the jury's answer to Special Issues

4, 5, 6 and 7 as submitted by the trial court are without support in the evidence. These issues inquired as to the amount and value of timber cut by appellee from the disputed area. In view of the disposition we are making of this case—these issues become moot.

All of appellant's points are overruled and the judgment of the trial court is affirmed.