**Samuel L. BRATEMAN et al., Appellants,**

**v.**

**UPPER CHANNEL SITE COMPANY, Appellee.**

**No. 14004.**

Court of Civil Appeals of Texas.

Houston.

March 19, 1964.

Rehearing Denied April 23, 1964.

Second Rehearing Denied May 28, 1964.

Joel W. Cook, Daniel Schlanger, Houston, for appellants.

Liddell, Austin, Dawson & Sapp, W. Robert Brown, Houston, for appellee.

BELL, Chief Justice.

Appellee sued appellants in trespass-to-try title to recover title and possession of 1.1 feet by 50 feet of Lot No. 9, Block 337, Southside of Buffalo Bayou, in the City of Houston. Appellants filed a cross-action contending the strip involved was a part of Lot No. 8 of said Block. The dispute involves the true southern boundary of Lot No. 9 which would be the northern boundary of Lot No. 8. The jury found the south boundary of Lot 9 to be located 102.7 feet south of the south line of Bell Avenue, as contended for by appellee and the court rendered judgment on the verdict in favor of appellee.

Appellants contend there is no evidence to support the jury's finding; that appellee is estopped from asserting the south line of Lot 9 is more than 100 feet south of the south line of Bell Avenue; and, in the

alternative, the answer is contrary to the overwhelming weight and preponderance of the evidence.

Lots Nos. 6, 7, 8, 9 and 10 of Block 337 have as their western boundary the east line of Louisiana Street. Lot No. 10 is located at the northwest corner of the block at the intersection of Bell Avenue and Louisiana Street. Lot No. 6 is located at the southwest corner of the block at the intersection of Leeland Avenue and Louisiana Street. The original boundary markers for the lots in this block and for the Obedience Smith Survey cannot be located, as is true generally with regard to property on the south side of Buffalo Bayou. There seems to be no recorded plat showing a division of the block into lots or showing what the dimensions of the block or the adjoining streets actually were. It seems that in about 1913 a Mr. Sands was City Engineer and he set up a system of reference monuments at certain street intersections and assumed to assign a width of 80 feet to the streets and 250 feet on each side to each block. Surveyors in Houston in making surveys of lots and blocks on the south side of Buffalo Bayou tie in to these monuments because all original boundary markers seem to be missing.

The stipulated common source of title is A. Bering. The two lots here involved came to be owned by Theodore Bering, Jr. Prior to the conveyance from Theodore Bering, Sr. to his daughter, Jennie C. Bering, on June 6, 1905, there is no conveyance by lots and block or by recitation of dimensions. In this deed to his daughter, Theodore Bering, Sr. described the property conveyed as being situated in Block 337 in the City of Houston "at the corner of Bell Avenue and Louisiana Street" and then particularly described it as follows:

> "Commencing at the intersection of the *south line* (emphasis here and elsewhere is ours unless otherwise stated) of Bell Avenue and the east line of Louisiana Street in said block for a corner; Thence southeasterly *with said Bell Avenue south line* 75 feet for corner; Thence southwesterly parallel with Louisiana Street east line 150 feet for corner; Thence Northwesterly parallel with said *Bell Avenue south line* 75 feet to the Louisiana Street east line for corner; Thence northeasterly with the said Louisiana Street east line to place of beginning."

Thereafter, on March 3, 1908, A. Bering executed a correction deed to Theodore Bering, Sr. correcting the deed of June 7, 1859, that he had given, and in the correction deed the property was described as follows:

> "Beginning at the corner of said Block 337 at the intersection of Bell Avenue and Louisiana Street; Thence *along Bell Avenue* in the direction of Milam Street 125 feet to the center point of Lot 11 *fronting on* said Bell Avenue; Thence at right angles and running through the center of Lot 11 parallel with Louisiana Street in the direction of Leeland Avenue 125 feet to a point on the rear line of said Lot 11; Thence at right angles and running parallel with Bell Avenue 125 feet to Louisiana Street a point on the front line of Lot 8; Thence at right angles and running along Louisiana Street to the point of beginning embracing Lots 9, 10 and the adjoining ½ of Lot 8 and the adjoining ½ of Lot 11 all in said Block 337."

■ We note that while this deed was after the deed from Theodore Bering, Sr. to Jennie C. Bering, the description in the deed corrected was bad, and the corrected description would, under the warranty in the deed to Jennie C. Bering, redound to her benefit under the after-acquired title rule.

On June 11, 1914, Jennie C. Bering conveyed to Theodore Bering, Jr., her brother, the land described as follows:

> "* * * all that certain parcel of land in Block #337, S.S.B.B. * * *,

known as fifty feet by seventy-five feet (50′ x 75′) off the front or west end of each lots numbered Eight, Nine and Ten (8, 9 and 10) said property *fronting 75 feet* (seventy-five) *on Bell Avenue* and 150 (One Hundred & Fifty) on Louisiana Street * * *."

The statement is then made that it is the same property conveyed to her by Theodore Bering by the above noted deed.

On February 10, 1919, Theodore Bering, Jr., conveyed to Vincent Navarro part of Lot No. 8 in Block No. 337, S.S.B.B., and described it as being shown by a plat recorded in Volume J, page 389 of the Deed Records, the lot fronting 50 feet on Louisiana Street and running back at right angles between parallel lines 50 feet apart for a depth of 75 feet. Appellants hold title by mesne conveyances under this chain of title. No one seems to find a record of this plat.

On August 15, 1921, Theodore Bering, Jr. conveyed "parts of Lots Nine (9) and Ten (10), and any excess adjoining the same in Block Three Hundred and thirty seven (337)," to C. J. Wright & Company, Incorporated. Then there is a metes and bounds description as follows:

"Beginning at an iron pipe driven in the ground at the northwest corner of the lot in said block heretofore conveyed by me to Vincent Navarro, being the said Navarro northwest fence corner, which point is on the westerly line of said block 337, and the easterly line of Louisiana Street;

"Thence north 35 deg. east along the westerly line of said block 337, and the easterly line of said Louisiana Street 102.7 feet to a point which is north 55 deg. west and distant 11 inches from an iron pipe driven in the center of a vitrified clay pipe buried in the ground in the identical position of the old fence post which stood in said position on said property for more than fifty years up to about the year 1913.

"Thence at right angles and running in the direction of Milam Street along the *front line* of said property on *Bell Ave. on the line of said old fence 50 feet* from corner.

"Thence at right angles running parallel with the first line of this tract 102.7 feet to a corner in the northeasterly fence line of the lot sold by me to said Vincent Navarro;

"Thence at right angles and running parallel with the southwesterly line of Bell Avenue, or front line of said property and along the fence line 50 feet to the place of beginning, embracing in said boundaries 50 x 50 feet off of each of Lots 9 and 10 and any excess between said Lot 10 and Bell Avenue."

Appellee holds by mesne conveyances under this chain of title. The description given in appellee's petition is as follows:

"BEGINNING at a point for the Northwest corner which is North 55° West and distant 11 inches from an iron pipe driven in the center of a vitrified clay pipe buried in the ground in the identical position of an old fence post which stood in said position on said property for more than fifty years up to about the year 1913;

"THENCE South 55° 00′ East and running in the direction of Milam Street *along the front line of said property on Bell Avenue on the line of said old fence fifty feet* to a point for corner;

"THENCE South 55° 00′ West at right angles, running parallel with the Westerly line of Block No. 337 and the Easterly line of Louisiana Street 102.7 feet to a corner in the Northeasterly fence line of a lot conveyed by Theo. Bering, Jr. to Vincent Navarro by Deed dated February 10, 1919, recorded in Volume 416, at Page 482, of the

Deed Records of Harris County, Texas;

"THENCE at right angles and running parallel with the Southwesterly line of Bell Avenue or front line of said property and along the fence line a distance of fifty feet to a point for corner;

"THENCE North 35° 00' East at right angles, along the Westerly line of Block No. 337 and the Easterly line of Louisiana Street 102.7 feet to the place of beginning."

In its petition appellee made clear that the only land involved in the suit was the southerly 1.1 feet of the tract described above, asserting it was a part of Lot 9.

Mr. O. M. Ellis was a surveyor employed to survey the property for appellee. The survey was made in February, 1959. He had the deed into appellee which gave the description recited in the petition which is substantially the same as in the deed out of Theodore Bering, Jr. to C. J. Wright and Company and the intervening conveyances on down to appellant. It will be noted that in each deed the description of the land calls for 102.7 feet along the westerly and easterly sides of appellee's tract and these lines call for a tie-in on the south with a fence on the north side of the lot conveyed by Theodore Bering, Jr., to Vincent Navarro. Too, the northwest corner of the tract is a point "North 55° West and distant 11 inches from an iron pipe driven in the center of a vitrified clay pipe buried in the ground in the identical position of an old fence post which stood in said position on said property more than fifty years up to about the year 1913." Mr. Ellis testified he did not in his survey find the fence or the vitrified clay pipe. He testified, however, in making his survey he had before him a survey made by Pat Keating, a surveyor in the City of Houston Engineering Department, made in April, 1919, just two months after the conveyance by Bering to Vincent Navarro, the survey being made for Theodore Bering. The plat showing the result of the survey is in evidence. It shows the position of the former fence post located near the northwest corner of appellee's tract and shows it to be marked by a vitrified pipe buried in the ground. At the time of the 1959 survey there was a concrete walk over the point where the vitrified pipe was called for. However, Mr. Ellis was able to locate or reconstruct the point by measurement from the City reference monuments marking the center of streets. Actually there is not a city reference monument at each street intersection. Here the nearest monuments were the one at Polk and Louisiana, which is two blocks north of Louisiana and Bell, and the one two blocks south, which is located at the intersection of Louisiana and Pease. Mr. Ellis began his survey by tying in to the monument at Polk and Louisiana. From the point of the vitrified pipe as reconstructed, he was able to survey what he called the theoretical lines. Measuring from such northwest corner south 102.7 feet as called for in appellee's chain of title from Theodore Bering, the surveyor reached the line which appellee contends is the south line of Lot 9 and the north line of Lot 8. While Mr. Ellis did not find a fence on this south line that was called for in deeds in appellee's chain of title beginning with the deed out of Theodore Bering in August, 1921, other testimony locates the remains of old fence posts on said line. Appellee's counsel employed another man to dig a trench along the line marked by Mr. Ellis as the south line of Lot 9 which he reached in measuring 102.7 feet from the northwest corner which was located by reference to the vitrified pipe also called for in the deeds, and there was found the remains of fence posts set along that line. Also Mr. Liddell, an attorney of the Houston Bar and longtime resident of Houston, testified that he had for many years been familiar with the property and he knew a fence had been located at that point from 1929 to 1955. It was located between a white stucco building situated on Lot 9 and a building on Lot 8

just south of the line as contended for by appellee. Some other witnesses corroborated Mr. Liddell to the extent of showing a fence at that point between the buildings for many years prior to 1955. Also the map prepared by Pat Keating of Lot 8 in April, 1919, shows a fence on the south of Lot 8. It was not found on the ground by Mr. Ellis, but he testified that on locating the point, by measurement, where it should be, and then measuring north to the north edge of a small false front on appellants' building, which is a point south of the line asserted by appellee, the appellants would have 51.2 feet occupied by them. Mr. Ellis testified he found an old building foundation on Lots 9 and 10. The distance from the northwest corner of Lot 10 to the south end of the foundation was 100.7 feet. (This was apparently the foundation of the old stucco building.)

On cross-examination Mr. Ellis was asked if he surveyed to locate anything about occupation on the south at the time of his survey in 1959. He stated he did not survey it but observed the occupancy. He stated the occupancy was about 6 feet north of the theoretical south line of Block 337 which would be the south line of Lot 6. Measuring from the northwest corner of the line of occupation to the southwest corner of the block as occupied in 1959, Ellis found a distance of 251.7 feet. This 251.7 feet does not measure to Leeland Avenue, but measures to the building line fixed by the City of Houston in 1920. When first questioned about the distance from the northwest corner of the block to the southwest corner of the block Mr. Ellis answered it was 257.7 feet. He then, based on occupancy with regard to the building line, subtracted 6 feet. If, of course, this 6 feet were not subtracted there would be an excess in the whole block of 7.7 feet and certainly all 5 lots, that is, Lots 6, 7, 8, 9, and 10 would have their 50 feet. Too, if the line between Lots 8 and 9 were located as appellee contends then Lots 6, 7 and 8 to the south would have at least 50 feet each. However, if the 251.7 feet is taken as the correct measurement, then there is a shortage of 1 foot to the south. If the 102.7 feet allotted to appellee is subtracted, it leaves 149 feet for Lots 6, 7 and 8. If Lots 6 and 7 are actually entitled to 50 feet each, there would be a shortage of 1 foot. It is assumed by the parties that they are and they may well be. We do find, as above recited, that the City, in about 1913, when fixing reference monuments, apparently assigned 250 feet to the blocks on the south side of Buffalo Bayou in this area. If the block is 250 feet, then there is an excess of 1.7 or 1.8 feet, considering 1959 occupany. Under the jury finding as to the correct location of the line appellee would be receiving 102.7 feet. If the line is fixed as contended for by appellants by moving the line north 1.2 feet from the line found by the jury, appellee would have 101.6 feet and Lots 6, 7 and 8 would have 50 feet each.

We previously noted that if the south line of Lot 8 is where the fence was as shown on Mr. Keating's survey of Lot 8 in 1919, appellants would have from that point north to the line as located by the jury a distance of about 51 feet. We should note that Mr. Ellis's plat made in 1959 shows a one-story masonry building on Lot 7 that overhangs the location of the line of the old fence on Lot 8 about 1.2 feet.

We should also note that to the east adjoining the west 50 feet of Lots 9 and 10 on the west side of the east half of Lots 9 and 10 someone, presumably the owners of the east half, have constructed a curb from the south line of Bell Avenue and it measures 101.6 feet. It makes a turn to the east at that point. If this 101.6 is subtracted from 102.7 called for in appellee's deed, you get the north line of Lot 8 located 1.1 feet north of where appellee contends and at the point contended for by appellants.

As we stated above, appellants contend that the jury verdict has no support in the evidence, and, alternatively, the evidence is insufficient to support the jury finding. These theories for reversal are advanced through Points of Error. Appellants also contend, though there is no point of error

contained in the brief, that appellee is estopped from asserting the south boundary line of Lot 9 is located more than 100 feet south of the south line of Bell Avenue as located on the ground with regard to the vitrified clay pipe and the building line coincident with it as fixed by the City in 1920. The asserted estoppel is based on the theory that when certain deeds into Theodore Bering, Jr. and into appellee described Lots 8, 9 and 10 as being 150 feet from north to south and called for the north line of the property (lot 10) to begin at the northwest corner of the block at the intersection of Bell and Louisiana and then to run along Bell, or the south line of Bell, reference was being made to Bell as fixed by occupancy and therefore the recitals for 100 feet for Lots 9 and 10 measured from Bell are absolutely binding. While there is no point of error asserting estoppel appellants do as a part of their argument urge it.

 We have also read appellants' motion for instructed verdict, their motion for judgment non obstante veredicto, and their motion for new trial, and the theory of estoppel is not advanced. Neither was there any objection to testimony attempting to locate the line more than 100 feet south of the south line of Bell as occupied. We are of the view that estoppel is an independent defense and must be asserted in a point of error and by not asserting it in the trial court and here it is waived. We do not think it is properly encompassed within the points of error of no evidence or contrary to the overwhelming weight and preponderance of the evidence, though of course such recitals may be considered purely as evidentiary of the true location of the line.

As in most cases seeking to locate boundaries where original markers are gone, there is much difficulty here.

 We are of the view, however, that there is evidence, and it is sufficient, to support the jury finding locating the south boundary of Lot 9 as contended for by appellee. In holding there is evidence we have viewed the testimony supporting the verdict most favorable to the verdict and in holding it was sufficient we have considered all evidence, that which supports it and that which militates against it. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

As stated above, Theodore Bering, prior to his conveyance to Vincent Navarro, owned at least the west 50 feet of all three lots. He owned the west 75 feet of Lot 8 which he conveyed to Navarro in 1919. In 1921 he conveyed to C. J. Wright and Company, appellee's predecessor in title. He commenced the description by tying into the northwest corner of Navarro's fence, which is described as representing the northwest corner of the lot he had conveyed to Navarro. The third call after the beginning call is for a line to run south parallel with the east line of Louisiana 102.7 feet to a corner in the northeasterly "fence line of the lot sold by me to said Vincent Navarro."

██ These recitals are by a former owner of both tracts made at a time when there was no controversy and at a time when he had parted with, or was parting with, title as to the location of the north line of Lot 8, which is also the south line of Lot 9. Bering was dead at the time of trial. Such declaration is admissible and is evidentiary of the true location. McCormick and Ray, Texas Law of Evidence, 2nd Ed., §§ 1361–1364; Hurt v. Evans, 49 Tex. 311; Whitman v. Haywood, 77 Tex. 557, 14 S.W. 166. Too, there was the recital calling for the vitrified clay pipe near the northwest corner of Lot 10. The point of the vitrified clay pipe could be reconstructed. Too, the deed recites the fact, though not the amount of excess. When Mr. Ellis located a point 102.7 south of the northwest corner of Lot 9 as located with regard to the vitrified clay pipe, he drove stakes. Then a trench was later dug by others and at that exact location there were found old fence posts. Testimony of witnesses showed an old fence in that position from 1929 to some time in 1955. It can well be inferred that this was Navarro's fence referred to in Bering's

deed. Too, the evidence shows occupancy by appellants and their predecessors in title of land south of the location of the fence. This shows long acquiescence in the location of the line as made by the fence and is evidence of the true location under the facts of this case. Further, the evidence shows occupancy by appellants has been of slightly more than 50 feet south of the old fence line and there is no evidence of any controversy until shortly before this suit was filed. Also, the old survey made by Pat Keating of Lot 8 in 1919 shows a fence along Lot 8 south at least 50 feet from the old fence we have just discussed. While it was not found on the ground by Mr. Ellis he did testify that locating its position as shown by Mr. Keating's survey by measurement, it would be 50 feet south of the fence on the north side of Navarro's property.

We will not notice all evidence relied on by appellants, but we do notice their reliance on the alleged deficiency of 1 foot south of the line as located by the jury and the recitals in the deeds. It must be remembered that there are no original markers and no original subdividing plat. The one foot deficiency exists only if we consider the City building line, fixed no doubt under their exercise of police power, the true south line of the block, because Mr. Ellis testified the measurement from the north of the block as fixed by the old vitrified clay pipe to the theoretical south line would be 257.7 feet. He deduced 6 feet to coincide with occupancy in 1959 and the building line. The jury could well conclude there was actually an excess on the south except for the building line. Nothing is shown of occupancy on the south that is of ancient vintage. The recitals in the deeds of frontage on Bell did not attempt to locate Bell as of their date.

When, in a case like this, there are no original markers, almost any testimony that will help locate the line is admissible. Reynolds v. Bradford, Tex.Civ.App., 233 S.W.2d 464 (CCA), no writ hist.; Angelina County Lumber Company v. McKnight, Tex.Civ.App., 265 S.W.2d 246 (CCA), ref., n.r.e.

The owners of Lots 6 and 7 were not indispensable parties. This was no suit seeking to allot an excess in the block. It was merely a suit to locate the boundary between property claimed by the parties to this suit. There was no plea in abatement seeking to have owners of other lots made parties. Even if it could be said they were necessary parties, which we need not pass on, there would be waiver by failure to file a plea in abatement.

The judgment of the trial court is affirmed.

On Motion for Rehearing

We remain of the opinion that there was evidence of probative force and it was sufficient to sustain the jury's location of the dividing line between Lots 8 and 9, Block 337, S.S.B.B., of the City of Houston. The appellee, who had the burden of proof discharged his burden.

In motion for rehearing appellants call our attention to an incorrect statement in our opinion. We stated no one seemed to be able to find the plat referred to in the deed from Theodore Bering, Jr., to Vincent Navarro. We were incorrect in this. It was in evidence. However, it is of such a nature that it affords no aid in determining lot lines. It shows a division into blocks, but no dimensions are shown.

Appellants indicate we attached some significance to the fact they filed a cross-action and have filed a supplemental transcript showing they took a non-suit. While we recited the filing of a cross-action, we attached no significance to this fact in our disposition of the case.

Appellants' motion for rehearing is overruled.