Margy AKERS, individually and/or Akers Family Limited Partnership, Appellant,

v.

H.R. STEVENSON, Jr., individually, and H.R. Stevenson, Jr., John Hollis, Britt Hollis, Eddie Hollis, Michael Hollis, Martha Stanley, Jimmy Thacker, Dwight Thacker, Freddie Mansfield, Bobby Harris, Sheila Burt, Joan Shoemake, Janice Austin, June Trahan, Roxie Miles, Keith Thacker, Elaine Denny, Bill Merrit, Gary Thacker, Marga Graham, and Raymond Graham, Appellees.

No. 09–00–313 CV.

Court of Appeals of Texas, Beaumont.

Submitted April 5, 2001.

Decided Aug. 30, 2001.

Lynwood Sanders, Sanders & Sanders, L.L.P., Orange, for appellant.

Keith Ellis, Jerry W. Gallier, Vidor, for appellee.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

GAULTNEY, Justice.

Almost a century ago, Jesse Hollis purchased a forty-four acre tract of land from the Adcock family. To enter his new property, which was partially surrounded by marshland, he routinely crossed over Adcock's property. His descendants continued to use a path to cross over the Adcock property to reach what was called "Hollis Island" without objection until 1999 when Adcock's descendant stopped them. Claiming an easement by necessity over the route used by Hollis Island owners to cross the Adcock property, appellees, the current owners of the Hollis forty-four acres, sued the current owner of the Adcock land ("Akers"). After a trial to the court without a jury, the judge entered findings of fact and conclusions of law supporting his judgment that appellees[1] were entitled to continue to cross over the Akers' property.

On appeal Akers contends there is factually insufficient evidence to support the trial court's grant of an easement by ne-

---

1. As set forth in the body of the judgment, those in whose favor the implied easement was granted are the following: "H. R. Stevenson, Jr., John Hollis, Britt Hollis, Eddie Hollis, Michael Hollis, Martha Stanley, Jimmy Thacker, Dwight Thacker, Freddie Mansfield, Sheila Burt, Joan Shoemake, Janiece Austin, June Trahan, Roxie Miles, Keith Thacker, Elaine Denny, Gary Thacker, Raymond Graham, Katheryn Morse, their heirs assigns and/or successors."

cessity. We are, in effect, asked to deny appellees' right of passage across Akers' land. We decline Akers' request.

█ An appellate court reviews a trial judge's findings of fact in the same manner as jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). Here Akers challenges the factual sufficiency of the evidence. If a party attacks the factual sufficiency of an adverse finding on an issue to which the other party had the burden of proof, the attacking party must demonstrate there is insufficient evidence to support the adverse finding. *See Hickey v. Couchman*, 797 S.W.2d 103, 109 (Tex. App.—Corpus Christi 1990, writ denied). The appellate court will sustain the appellant's challenge only if the evidence supporting the findings is so weak as to reveal the findings to be clearly wrong and manifestly unjust. *Harris v. Nelson*, 25 S.W.3d 917, 919 (Tex.App.—Beaumont 2000, no pet.).

█ No express easement was included in the deed of land from Adcock to Hollis in 1907 or in the deed from Faulk[2] to Hollis in 1888. However, then and now, when someone sells land which cannot be reached except by crossing over the property of the seller, the law presumes that the lack of an express easement in the deed was an oversight and that the parties intended to grant an easement permitting access. *See Bains v. Parker*, 143 Tex. 57, 182 S.W.2d 397, 399 (1944). The property which benefits from the easement is the dominant estate, and the property owned by the grantor of the easement is the servient estate. *See Daniel v. Fox*, 917

S.W.2d 106, 110 (Tex.App.—San Antonio 1996, writ denied). When a party seeks to establish the existence of an implied easement by grant, he must show that "(1) there was unity of ownership of the dominant and servient estates and that the use was (2) apparent, (3) in existence at the time of the grant, (4) permanent, (5) continuous, and (6) reasonably necessary to the enjoyment of the premises granted." *Id.*

█ In point of error one, Akers contends the trial court erred in granting appellees an easement by necessity because the evidence is factually insufficient to support the grant. Specifically, Akers argues there can be no easement by necessity because the forty-four acre tract is not "surrounded by lands of the grantor or lands of third persons." *See Bains*, 143 Tex. 57, 182 S.W.2d at 399.

█ Both parties acknowledge there was unity of ownership of the dominant estate (the forty-four acre tract) and the servient estate (Akers' land); Jesse Hollis bought the forty-four acres from Adcock, Akers' predecessor in title. The problem, according to Akers, is that the forty-four acre tract adjoins another Hollis tract rather than lands of the grantor or of third persons. Thus, if the forty-four acre tract could be accessed through the seventy-five acre tract, both of which were owned by Hollis, then there could be no easement by implication over Akers' land, since there was no unity of ownership between the original Hollis tract and the Akers' land.[3]

---

2. In 1888 Jesse Hollis purchased approximately seventy-five acres of land from J.W. Faulk and Octavia Faulk. The seventy-five acre tract adjoins the forty-four acre tract that Hollis purchased in 1907 from the Adcocks.

3. There is no unity of ownership between the seventy-five tract and the Adcock tract (later

the Akers' property), because Hollis bought the seventy-five acres from Faulk, not Adcock. "To establish unity of ownership, the claimant must prove [that] prior to severance, his grantor owned the dominant and servient estate as a unit or single tract." *Koonce v. Brite Estate*, 663 S.W.2d 451, 452 (Tex.1984).

Akers' argument has no merit. Under the record in this case, the fact that the forty-four acre tract adjoins the seventy-five acre tract does not preclude an easement by necessity to the forty-four acres. The record contains testimony from various witnesses that the roadway on which the easement by necessity is sought comes off Highway 105, crosses the Akers' property, goes into the forty-four acre tract, crosses it, and then enters the seventy-five acre tract. Witnesses testified the forty-four acre tract (as well as the seventy-five acre tract) was, is, and can only be accessed by this one route.[4] The fact that one can go from the seventy-five acre tract to the forty-four acre tract does not preclude the grant of an implied easement to the forty-four acre tract when there is factually sufficient evidence that the route of access to either tract is and has always been through the forty-four acre tract only.[5] We overrule point of error one.

In point of error two, Akers asserts the trial court erred in concluding that appellees are entitled to an easement by necessity on the existing hard-shell roadway across Akers' land and that the easement should be located at a place least burdensome to the servient estate. In effect, she contends the roadway claimed by appellees as an easement is not the same as that used in earlier years and that appellees do not have the right to choose the route through the servient estate.

■ In support of her claim, Akers directs us to maps of the area and to the 1956, 1952, 1943, and 1930 aerial photographs admitted into evidence through the testimony of Earl Verrett, a registered professional land surveyor. Akers appears to argue that the maps and photographs, evaluated and interpreted by the surveyor, contradict testimony from lay witnesses that the roadway used to access the forty-four acre tract in the 1930's is at the same basic location as the hard shell roadway later constructed by oil companies and in use now.

According to surveyor Verrett, the aerial photographs from the 1950's plainly show the existence of the current roadway traveled on and claimed as an easement by appellees; he further testified he found no evidence of the existence of the roadway in the 1930 photograph. His testimony also suggested the existence of another route to the Hollis homestead other than the one claimed by appellees as the roadway through the Akers' property, into the forty-four acres, across the forty-four acres, and into the seventy-five acre tract. If the

---

4. As discussed later in this opinion, there was controverting evidence from a surveyor who testified he reviewed maps and aerial photos of the area from the 1930's, 1940's, and 1950's and found no evidence in the earlier photos of the roadway described by various witnesses who claimed they traversed the path in the 1930's. The trial judge weighed the conflicting evidence and, in his role as fact finder, determined that the roadway was in existence prior to 1941 and was used by Hollis and his descendants. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986) (The trial judge evaluates the testimony and credibility of the witnesses and resolves inconsistencies in order to arrive at the facts he deems most reasonable under the evidence.).

5. Akers also argues in point of error one that "[e]ven if the [seventy-five] acre homestead tract [cannot] meet the test of other access, access over [Akers'] lands to the [forty-four] acre tract [cannot] be utilized for the benefit of the [seventy-five] acre tract or any of the other contiguous tracts of the Plaintiffs...." We need not address Akers' argument since the judgment, set out in pertinent part below, appears to resolve that issue in her favor: "This judgment does not in any way constitute easement beyond said north boundary of the forty-four (44) acre tract."

property was actually accessed over a different route, then, according to Akers, the evidence is insufficient to establish the easement at the location claimed by appellees "on the hard shell roadway." On cross examination, Verrett acknowledged that if the use of the easement at the claimed location was "very intermittent" during the 1930's, or if the "pathway varie[d] considerably," the path would not have shown up on an aerial photograph.

Appellees presented testimony regarding the location of the roadway from five witnesses who either visited or lived on or by the forty-four acres during the 1930's. Walter Toronjo, Jr., seventy-six, Lawrence Winfree, eighty-seven, Harold Sorter, seventy-two, Clara Anderson, seventy-seven, and James Waldrep, Jr., seventy-two, all testified they had been on the path when they were young and that the roadway today takes basically the same route as it did back in the 1930's and 1940's. As Harold Sorter explained, when the oil companies came in and built a shell road, they followed the same route as the old path, because it was on the highest land. Winfree, Sorter, Anderson, and Hollis all agreed they did not know of any other route to get back to the Hollis forty-four acres or the seventy-five acre tract.

▄▄▄▄ In reviewing the evidence, we accord due deference to the trial court, which, as the trier of fact presented with conflicting testimony, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986). The court, as trier of fact, is free to believe one witness and disbelieve others; the court may resolve incon-

sistencies in a witness's testimony; and the court may accept lay testimony over that of experts. *Id.* The trial judge accepted the testimony of those who had actually been on the roadway—back in the 30's and 40's and in the recent past. Because there was ample evidence to support the claimed location of the easement to the forty-four acre tract, we hold the trial court did not err in concluding appellees are entitled to an easement by necessity in the location set out in the judgment.

In points of error three and four,[6] Akers challenges certain findings of fact and conclusions of law by arguing they were supported by inadmissible hearsay evidence: The challenged findings of fact (seven, eight, and ten) and conclusions of law (three and four) are set out below:

### Findings of Fact

7. Jesse Hollis continued to cross over Akers' land to reach his 119 acre tract.

8. Heirs of Jesse Hollis (Plaintiffs) continued to cross over Akers' land via a roadway that is in existence, and was in existence, prior to 1941.

10. There is no other access nor has there been any other access to the Hollis tract.

### Conclusions of Law

3. The 44 acre tract merged with the 75 acre tract into one tract.

4. The Akers' tract was servient to the Hollis' dominant 119 acre tract.

In her argument, Akers contends these findings and conclusions are based on George Hollis's hearsay-filled testimony

---

6. As worded, points of error three and four do not appear to entirely comport with the argument employed by Akers to support them. Our

analysis is limited to the matters actually presented in her argument.

regarding events alleged to have taken place prior to his birth. She argues that, without the inadmissible hearsay, there is no evidence to support the referenced findings of fact and conclusions of law.

Akers acknowledges there is an exception to the hearsay rule that allows hearsay testimony to prove family history; however, she maintains the exception does not extend to "a recitation of speculation, rumor, gossip and stories about factual matters affecting the title of land by seeking to burden real property with rights of third parties." The hearsay testimony Akers contends should have been excluded at trial was from George Hollis.

George Eddie Hollis testified his great grandfather bought the seventy-five acre tract in 1888 from J.W. Faulk and the forty-four acre tract in 1907 from the Adcocks. Though not something within his personal knowledge (since he was born in 1944, and the conveyances were made in 1888 and 1907 respectively), the fact of the conveyances was also confirmed by deeds that were admitted into evidence; the deeds established the parties, the dates, and the conveyance. George Hollis also testified concerning his great grandfather's personal history—Jesse Hollis's purchase of the seventy-five acre tract in 1888 (confirmed by the deed), his purchase of the forty-four tract in 1907 (confirmed by deed), his occupation as a farmer, his eight children, his use of the roadway to his property, his death in 1916, and, after his death, his widow's decision to reside on the seventy-five tract where she continued to raise their eight children.

Pursuant to TEX.R. EVID. 803(19)(20),[7] evidence concerning personal or family history, and boundaries of or customs affecting lands in the community, are exceptions to the hearsay rule. These exceptions arise from necessity and are founded on the general reliability of statements by family members about family affairs when the statements by deceased persons regarding family history were made at a time when no pecuniary interest or other biased reason for the statements were present. *See Brateman v. Upper Channel Site Co.*, 378 S.W.2d 882, 888 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.) (Applying common law precursor to Rule 803(20), appellate court found former owner's previous recitals, made at a time when there was no controversy and at a time when he had parted with, or was parting with, title as to the location of the north line of the lot, were admissible as evidence of the true location.); *Johnson v. State*, 737 S.W.2d 901, 905 (Tex.App.—Beaumont 1987), *affirmed as reformed*, 784 S.W.2d 47 (Tex. Crim.App.1990) (Exception to hearsay rule [applying Rule 803(19) in the criminal context] exists for statements concerning family history and blood relatives.); *but see Roberts v. Allison*, 836 S.W.2d 185, 190–91 (Tex.App.—Tyler 1992, writ denied) (Ap-

---

7. Under TEX.R. EVID. 803:

The following are not excluded by the hearsay rule, even through the declarant is available as a witness:

. . . .

(19) **Reputation Concerning Personal or Family History.** Reputation among members of a person's family by blood, adoption, or marriage, or among a person's associates, or in the community, concerning a person's birth, adoption, marriage, divorce, death, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history.

(20) **Reputation Concerning Boundaries or General History.** Reputation in a community, arising before the controversy, as to boundaries of or customs affecting lands in the community, and reputation as to events of general history important to the community or state or nation in which located.

pellate court found no error in excluding evidence as hearsay where the proposed testimony related to an individual's family assertion of an easement without any indication of the community's interest in or knowledge of the family's claim to access the property or any indication of a general reputation within the community of his right of access.).

■ George Hollis, a great grandson and direct descendant of Jesse Hollis, testified to family history and to boundaries or customs affecting land within the community. We find the substance of his testimony places it within the two hearsay exceptions.[8] George Hollis testified he had spent several hundred hours researching the history of the property; in so doing, he talked to many people, investigated the acquisition of the property, and discovered "the access to the road was over a hundred years[.]" He related his personal memories, as well as the family history told to him by his own family members and people in the community. Moreover, in addition to Hollis's testimony concerning the roadway and its usage through the years, the court heard testimony from older people in the area concerning the right of access to the forty-four acre tract, the existence of the roadway, and its condition over the past decades.[9] We find that Hollis's testimony falls within the two exceptions to the hearsay rule in this case and that it was admissible to support the judgment. Consequently, we overrule points of error three and four.

Having overruled appellant's four points of error, we affirm the judgment of the trial court.

8. We note that appellees may have also been claiming the evidence was admissible under Tex.R. Evid. 804(b)(3), statement of personal or family history.

9. Generally, any error is deemed harmless if the objecting party subsequently permits the same or similar evidence to be introduced without objection. *See Richardson v. Green,* 677 S.W.2d 497, 501 (Tex.1984). Furthermore, in a trial to the court we presume the trial court ignored incompetent evidence if there is competent evidence to support the judgment. *See Gillespie v. Gillespie,* 644 S.W.2d 449, 450 (Tex.1982).