We held, in Wilson v. State, 156 Tex.Cr.R. 228, 240 S.W.2d 774, that a proceeding to revoke probation is not a criminal trial.

On appeal, the review of proceedings in a probation hearing will be limited to a determination of whether or not the trial judge abused his discretion in revoking the probation. Jones v. State, 159 Tex.Cr. R. 24, 261 S.W.2d 317.

We further find that the proof that appellant failed to make the child support payments is sufficient cause for revocation of probation.

The judgment is affirmed.

Josephine A. EHLERS et al., Appellants,

v.

DELHI-TAYLOR OIL CORPORATION et al., Appellees.

No. 13826.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 25, 1961.

Hall, Rawlins & Hall, Edinburg, Ewers, Toothaker, Ewers, Elick, Jones & Abbott, McAllen, for appellants.

Turner, White, Atwood, Mecre & Francis, C. Sidney McClain, Dallas, Chas. E. Thompson, F. E. Butler, McAllen, for appellees.

BARROW, Justice.

This is a suit in trespass to try title originally brought by Delhi-Taylor Oil Corporation and Mayfair Minerals, Inc., against Josephine A. Ehlers and other persons named in plaintiffs' petition, as heirs at law of Ed Koch, and also Jack Butler. The suit involved the title and possession of the oil, gas and other minerals in and under a certain 3.36 acre tract of land hereinafter described. By amended petition L. W. Shaffer was made a party defendant. Plaintiffs relied upon the record title in themselves from the stipulated common source of title. They also plead the three, five, ten and twenty-five year statutes of limitation. The defendants all filed pleas of not guilty, and the heirs of Koch and Jack Butler filed a cross-action wherein they claim title to .21 acres out of the west end of said 3.36 acre tract, the Koch heirs claiming as owners, and Jack Butler claiming the oil, gas and other minerals as lessee of said Koch heirs. It was agreed that H. J. Ashberger is the common source of title, being evidenced by warranty deed from said Ashberger to Ed Koch, dated February 9, 1925, and duly recorded. The trial was to the court without a jury. Judgment of the court was for the plaintiffs. No findings of fact or conclusions of law were requested or filed. A copy of a plat which shows the tract of land in controversy, introduced in evidence by defendants as their Exhibit 1, is hereto attached. The original recorded plat shows no line between the .21 acres claimed by defendants and the remainder of the tract.

Appellants predicate this appeal upon five points. By Point No. 1, they contend that there is no evidence to support the judgment because, as a matter of law, the deed from Ed Koch to C. W. Moehnke et ux., to Leigh W. Shaffer conveyed only the East 562 feet of the 3.36 acres involved and did not convey the West .21 acres of said 3.36 acres.

In proving their record title, appellees offered in evidence the deed from H. J. Ashberger to Ed Koch, dated February 9, 1925; the deed from Ed Koch to C. W.

Moehnke, dated December 9, 1925; the deed from C. W. Moehnke et ux. to Leigh W. Shaffer, dated December 24, 1927; and the oil, gas and mineral lease from L. W. Shaffer et ux. to Coastal Refineries, Inc., and Mayfair Minerals, Inc. It was stipulated

PLAT
Showing
THAT PORTION OF LOT 7, BLOCK 11, JOHN CLOSNER SUBDIVISION
LYING NORTH AND EAST OF CANAL RIGHT-OF-WAY
HIDALGO COUNTY, TEXAS

Prepared from
deed records

Charles L. Melden
Civil Engineer & Surveyor
Edinburg, Texas

Def. Ex. 1
10-17-60
RV

that appellees now own such minerals. The deed from Ashberger to Koch described the property conveyed, as follows:

"First Tract: All of that portion of Lot No. Seven (7), Block No. Eleven (11), of the subdivision of Porciones 71 and 72 lying north of Lateral 'E', containing 3.36 acres of land, more or less.

"Second Tract: 16.70 acres of land, more or less, being the East 562 feet of Lot No. (6) in Block No. Eleven (11), and the East 562 feet of Lot No. Seven (7) in Block No. Eleven (11) lying north of the canal, all of said land being out of the subdivision of Porciones 71 and 72 in Hidalgo County, Texas, according to the map or plat of such subdivision as the same appears of record in the office of the County Clerk of Hidalgo County, Texas;

"Second Tract above described being the same conveyed to H. J. Ashburger by John Closner and William F. Sprague by deed dated the 9th day of December, 1911, recorded in the Deed Records of Hidalgo County, Texas, in Volume '29' on pages 137–139 thereof."

The deed from Koch to Moehnke described the property as follows:

"Twenty and 06/100 (20.06) acres of land, more or less, being that portion lying North of *Latteral* E, containing approximately Three and 36/100 (3.36) acres of land in lot Number Seven (7) in Block Number Eleven (11) of a certain survey and certain resubdivision of certain lands embraced in Porcion 71, Narciso *Cavazas* original grantee and Porcion 72, Jose Maria Balli, original grantee, in said County of Hidalgo, State of Texas, as shown by the map or plat of such subdivision as the same appears of record in the office of the County Clerk of Hidalgo County, Texas; and Sixteen and 70/100 (16.70) acres of land, more or less, being the East Five Hundred Sixty-two (562)

feet of Lot Six (6) in Block Eleven (11) and also the East Five Hundred Sixty-two (562) feet of Lot Seven (7) in Block Eleven (11) lying north of the *Latteral* out of a certain survey and certain resubdivision of certain lands embraced in Porcion 71, Narciso *Cavazas* original grantee, and Porcion 71, Jose Maria Balli, original grantee, in said County of Hidalgo, State of Texas, containing Twenty and 06/100 (20.06) acres of land, more or less."

The deed from Moehnke to Shaffer followed substantially the description in the deed from Koch to Moehnke. Appellees also introduced, for the limited purpose of explaining the descriptions in the above-mentioned deeds, the deed from John Closner et al. to H. J. Ashberger, dated December 9, 1911; the deed from John Closner et al. to Ralph R. Langley, dated March 1, 1913, which deed stated that it was understood that the deed was to clear the description in the deed from Closner et al. to Ashberger, executed on Dec. 9, 1911, and in the deed from Closner et al., to J. Thompson, executed on Jan. 20, 1912. The deed from Closner to Langley conveys the entire 3.36 acre tract. Appellees then introduced the deed from Ralph R. Langley to H. J. Ashberger, which also conveyed the entire 3.36 acre tract. It is, therefore, obvious that in the conveyance from Ashberger to Koch the entire 3.36 acre tract is conveyed as the "First Tract" just as it is described in the deed from Langley. Then, as the "Second Tract" the description in the deed from Closner to Ashberger is copied, which conveys the tract of 16.70 acres out of Lot No. 6, and the East 562 feet of the 3.36 acre tract. This deed had the effect of conveying, first the whole of the 3.36 acre tract, and then the additional conveyance of only the East 562 feet thereof. We think it is clear that the subsequent conveyance of only a part of a tract which had already been conveyed as a whole may be regarded as mere surplusage. Appellants contend that the conveyance of the 562 feet off the east side of the tract is a more specific de-

scription of the tract conveyed and prevails over the first description. We do not so regard it. One of these descriptions is no more specific than the other. We think it is clear from the deed and the language used therein that the second description was not intended as a lessening or limitation of the land clearly conveyed in the first description. Again, we fail to see how appellants can contend that title to the entire 3.36 acre tract passed to Koch under the Ashberger deed, and at the same time contend that title thereto did not pass from him to Moehnke, and in turn to Shaffer. A reading of the descriptions hereinabove set out do not indicate enough difference to justify that contention. We are of the opinion that good record title to the entire 3.36 acre tract was in L. W. Shaffer.

■ By Point No. 2, appellants contend that there is no evidence to support an implied holding that appellees have good title under the twenty-five year statute of limitations; by Point No. 3, they contend that there is no evidence to support an implied finding that appellees have good title under the ten-year statute of limitations; and by Point No. 4, that there is no evidence to support an implied finding that appellees have good title under the five-year statute of limitations. In passing upon these points we must consider only the evidence which supports the implied holdings and disregard all evidence to the contrary.

Appellees' suit was filed July 6, 1960. On May 17, 1960, L. W. Shaffer and wife conveyed to appellants, Koch heirs, by quitclaim deed, a tract of .26 acres of land out of the west part of the 3.36 acre triangular tract, beginning 562 feet from the northeast corner thereof. On April 19, 1960, said appellants, Koch heirs, executed an oil, gas and mineral lease to appellant Jack Butler, leasing to him the .26 acre tract.

■ Appellant L. W. Shaffer testified as a witness for appellants. His testimony shows that in the year 1927, shortly after he purchased the land, he moved on the tract and continued to live thereon until about two years before the trial. He testified that as early as the year 1929 he planted fruit trees on the most westerly end of the tract, being the .21 acres claimed by appellants; that he gathered and used all the fruit from these trees during all the years he lived there, and received all the benefit therefrom; that no other person gathered or received any of such fruit; that he cultivated, used and enjoyed the entire 3.36 acre tract during all those years. He further testified that he paid taxes on the entire 3.36 acre tract. He did testify that he thought he bought only the east 562 feet of the 3.36 acre triangle, but admitted that he claimed all his deed called for. The record shows that he paid the taxes as they accrued on the entire 3.36 acre tract, continuously from 1930 to 1960, both inclusive. The oil, gas and mineral lease from Shaffer and wife under which appellees claim is dated January 10, 1949. Since that date appellees have paid all taxes due against the mineral estate, and have paid such taxes as they accrued, for more than five years after actual production began, prior to any adverse claim by appellants. Appellees' lease was filed for record February 5, 1949. L. W. Shaffer's deed was filed for record January 28, 1929. Thus it is apparent that there is evidence to support the trial court's implied finding of title in appellees and those under whom they claim, under the five, ten and twenty-five year statutes of limitation. See articles 5509 et seq., Vernon's Tex.Civ.Stats.

By Point No. 5, appellants contend that the description of the land in the lease from L. W. Shaffer and wife to Coastal Refineries, Inc., and Mayfair Minerals, Inc., is ambiguous and so indefinite as to be void. We overrule that contention. The description in said lease is as follows:

"* * * the following described land in Hidalgo County, Texas, being a part of the John Closner et al Subdivision of Porciones 71 and 72, as per map thereof recorded in the office of the County Clerk of Hidalgo County,

Texas, the tracts hereby leased described as follows:

"The East 16.83 acres of Lot Six (6) in Block Eleven (11) of said Subdivision, AND

3.26 acres more or less out of the north part of Lot Seven (7) in Block Eleven (11) of said Subdivision, said 3.26 acres lying north and east of Lateral 'E' in said Lot.

"For the purpose of calculating the payments and royalties hereinafter provided for, said land is estimated to comprise 20.09 acres, whether it actually comprises more or less."

It is clear from the language of the lease as a whole that the 20.09 acres covered is made up of the 3.36 acre tract, out of Lot No. 7 and lying north of Lateral "E", and the 16.83 acres out of Lot No. 6, all known as Shaffers' home place. The record shows that the 3.36 acre triangle is the only land in Lot 7 which lies north and east of Lateral "E". These facts were in existence at the time the lease was made. The lessee paid annual rentals on the entire leased acreage. Shaffer, by instrument duly executed and recorded, recognized, adopted, ratified and confirmed the lease of such acreage in a change of depository for rentals. Likewise, in a division order asserting his ownership of royalties on the 20.09 acres of land, Shaffer again so recognized and confirmed the acreage leased, and designated said acreage as his "home place."

■ The designation of the acreage in the 3.36 acre triangle has been stated in various ways in the chains of title. In various conveyances the entire triangle is described as containing 3.36 acres, and in the same deeds the whole tract, including the triangle and the 16.70 acres in Lot No. 6, is described as containing 20.06 acres, the same acreage called for in the lease, except that the part in Lot No. 6 is designated as containing 16.83 acres rather than 16.70 acres. In the quitclaim deed from Shaffer

to Koch heirs, the portion claimed by appellants is described as containing .26 acres, and in the lease from Koch heirs to Jack Butler it is also so described, whereas, in their pleadings appellants claim a strip containing only .21 acres. Moreover, the acreage called for has been unitized with other lands, and appellees have been regularly paying the royalty, and Shaffer has been receiving his proportion thereof, upon the 20.09 acres out of the home place. We think, under all the facts in evidence, it is apparent that the entire 3.36 acre tract was leased, and the statement therein calling for 3.26 acres, more or less, is not fatal to the description so as to make the conveyance void.

■ The rules of construction of such conveyances have been stated in Miller v. Hodges, Tex.Com.App., 260 S.W. 168, 170, wherein the Court said:

"In 8 R.C.L. p. 1074, it is said:

" 'The sole purpose of a description of land, as contained in a deed of conveyance, being to identify the subject-matter of the grant, a deed will not be declared void for uncertainty if it is possible, by any reasonable rules of construction, to ascertain from the description, aided by extrinsic evidence, what property it is intended to convey.'

"This general rule has been many times stated by our courts. The extrinsic evidence which is admissible must not be for the purpose of adding to or modifying the description contained in the deed, but is for the purpose of explaining the calls in the deed and applying them to the subject-matter, and thus give effect to the deed. The general rule may be stated in this way: The description in a deed or contract, while it need not in itself fully and definitely identify the property conveyed, must contain sufficient particulars to afford or point out the means whereby identification may be completed by parol evidence.

"In 18 C.J. 277, this rule is announced:

" 'The intent of the parties, as manifested by the language of the deed, will, as a general rule, control in determining the property conveyed, and in case of ambiguity or uncertainty the language of the description will be liberally construed in order to effectuate, if possible, such intention.'

"In ascertaining this intention, in cases of doubt, the court will consider all of the facts and circumstances existing at the time the parties contracted, and will as nearly as possible assume their position, so as to interpret their language in the light of the circumstances as they were when the transaction was made. The following quotation has been adopted by the courts for many years;

" 'The rule is that where the writing within itself, or by reference to other writings, contains sufficient data so that by the aid of parol evidence no question as to the intention of the parties can arise, it is sufficient. The most specific and precise description of the property requires some parol proof to complete the identification. A more general description requires more. When all the circumstances of possession, ownership, situation of the parties, and their relations to each other and the property, as they were when the negotiations took place and the writing made, are disclosed, if the meaning and application of the writing, read in the light of those circumstances, are certain and plain, the parties will be bound by it as a sufficient written contract or memorandum of their agreement.'

"It is also a well-established principle that, if the words used in the description of a deed are uncertain, resort may be had to the construction given them by the parties themselves; and, where they have given same a practical construction and made them applicable to certain property, this will be a strong circumstance in ascertaining their intention. See 18 C.J. 279, and authorities cited."

These rules have been followed in similar situations in the following cases: Chapman v. Crichet, 127 Tex. 590, 95 S.W. 2d 360, 96 S.W.2d 64; Gramm v. Coffield, Tex.Civ.App., 116 S.W.2d 1089; Thompson v. Kansas City Life Ins. Co., Tex.Civ.App., 102 S.W.2d 285; Rhoden v. Bergman, Tex. Civ.App., 75 S.W.2d 993; Callahan v. Walsh, Tex.Civ.App., 49 S.W.2d 945. Moreover, the rule in Texas is that a deed is not void for uncertainty of description unless on its face the description cannot, by extrinsic evidence, be made to apply to any definite land. Where the deed affords some data susceptible of being connected, by parol testimony, with some definite land, the description is in law sufficient. 14 Tex. Jur. 998, Deeds, § 201.

The judgment is affirmed.