CITY OF MISSOURI CITY,
Texas, Appellant,

v.

Mrs. Oliver SENIOR et al., Appellees.

No. 17291.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

May 17, 1979.

Rehearing Denied June 14, 1979.

Olson & Olson, William A. Olson, Houston, for appellant.

Butler, Binion, Rice, Cook & Knapp, Claude C. Roberts, Houston, Roane, Schwartz & Kalinowski, Don T. Schwartz, Rosenberg, for appellees.

WARREN, Justice.

This is an appeal by the City of Missouri City, Texas, from a judgment of the trial court holding two of its annexation ordinances void.

On October 19, 1965, appellant acting through its city council passed ordinance 102, thereby annexing what purported to be 89.281 acres of land owned by Dr. Hampton Robinson. He is not a party to the suit. On May 28, 1968, appellant acting through its city council passed ordinance 116 thereby annexing land owned by the appellees, Mrs. Oliver Senior, W. R. Senior, Anderson Brothers Farm, Incorporated and Ben Anderson.

Trial was to the court. The issue most vigorously contested was the sufficiency of the description of the land encompassed and purportedly annexed by ordinance 102. It is undisputed that the land purportedly annexed by ordinance 102 was contiguous to the then existing city limits. The land annexed by ordinance 116 was not adjacent to the city limits unless ordinance 102 effectively annexed the tract of Dr. Robinson.

In the trial court appellees contended (1) that ordinance 102 was void ab initio because the legal description contained in the ordinance was deficient and (2) as a consequence, ordinance 116 was void because it purported to annex territory which was not adjacent or contiguous to the city limits.

The court found inter alia that:

(1) The description contained in ordinance 102 is impossible to close the boundary or area to be annexed and therefore is insufficient to describe any land, or territory to be annexed to the City of Missouri City, Texas.

(2) That the appellee had legal status and standing to maintain this suit both as to ordinance 102 and 116.

(3) That since ordinance 102 is void ab initio, ordinance 116 is void ab initio because appellant, without authority of law or color of law purported to annex lands and territory described by ordinance 116 which were not contiguous or adjacent to the city limits of the City of Missouri City, Texas.

(4) That the action of the city council in passing ordinance 116 was void ab initio and without authority of or color of law.

(5) That neither ordinance 102 nor 116 had been validated by the legislature.

■ Appellant claims the trial court erred in failing to dismiss plaintiffs' challenge against the two ordinances because the challenges constitute a collateral attack upon an ordinance, valid on its face, which was adopted pursuant to and under color of law. In Texas, private parties may collaterally attack an annexation ordinance if (1) they are directly affected by the ordinance and (2) the ordinance is void ab initio. *Deacon v. City of Euless,* 405 S.W.2d 59 (Tex. 1966); *City of Houston v. Harris County Eastex Oaks Water and Sewer District,* 438 S.W.2d 941 (Tex.Civ.App.—Houston [1st Dist.] 1969, ref'd n. r. e.).

■ It was stipulated that Missouri City has assessed ad valorem taxes on the lands encompassed by ordinance 116. The imposition of this tax satisfies the first threshold requirement. *Deacon, supra.*

■ In order to satisfy the second threshold requirement, the allegations must, if proved, demonstrate that the ordinance was void ab initio and not just voidable for irregularities. A legal description which does not close is void. *State ex rel Rose v. City of LaPorte,* 386 S.W.2d 782 (Tex.1965). An ordinance which purports to annex non-adjacent territory is void ab initio. *City of Houston v. Harris County Eastex Oaks Water and Sewer District, supra.* For these reasons, the appellees had standing to collaterally attack these ordinances. Appellant's points of error 5 and 6 are overruled.

Appellant's points of error one, two, three, and four assert that the trial court erred in finding that the description of the territory annexed by ordinance 116 was not adjacent to the corporate limits of the city. The crux of the trial court's finding was the insufficient description of the boundaries of ordinance 102. It is conceded that if the ordinance 102 defines boundaries which close, then the land annexed by ordinance 116 would be adjacent to the city. A city annexation ordinance containing an inadequate description which does not close after standard rules of construction and surveying practices are employed, is void. *Rose, supra.* If the description cannot be literally applied due to an inaccuracy, a reasonable construction of the ordinance as a whole must be made to carry into effect the intent of the municipality. *State ex rel. American Manufacturing Co. v. City of Fort Worth,* 339 S.W.2d 707, 709 (Tex.Civ. App.—Fort Worth 1960, ref'd n. r. e.).

The description contained in ordinance 102 was copied verbatim from the petition for annexation submitted by the landowner, Dr. Hampton C. Robinson. Both descriptions omitted one call and further misstated or omitted four intermediate calls. Due to these inaccuracies the standard surveying technique of reversing the calls could not be employed. It is also undisputed that by referring merely to the petition for annexation and the annexation ordinance the boundaries did not close. In the trial court, a surveyor called by appellant testified that the description could be closed by conducting a survey on the ground and by reference to the deed records. A surveyor called by appellees testified that it was impossible to close the boundaries and thereby enclose a tract of land.

The first two calls in the description conflicted. These calls read as follows:

First Call:
BEGINNING in the center line of Oyster Creek, 200.7 feet North of a 1 inch iron pipe set in the Northeast right-of-way line of the Sugar Land Railroad for corner, being the city limit line of Missouri City, Texas, and the Northwest corner of said 89.281 acre tract.

Second Call:
THENCE South 52 degrees 27 minutes West 200.7 feet to a 1 inch iron pipe set in Northeast right-of-way line of the Sugar Land Railroad for corner, being on the city limit line of Missouri City, Texas.

Both surveyors testified that one of the calls was inaccurate because they do not run on the same course. Appellees' surveyor testified that this conflict was confusing and created an ambiguity as to the true point of beginning. Appellant's surveyor reconciled this conflict by locating the iron stake called for in the first call (point B), from which point he reversed the second call, turned the angle, and measured 200.7 feet to establish the northeast corner (point A). Having established points A and B, both surveyors could then establish the next point (point X) by following the third call which supposedly established the southeast corner. This call and the fourth call read as follows:

Third Call:
THENCE South 37 degrees 33 minutes East 2,476.7 feet along the North right-of-way line of said railroad to Southeast corner of said 89.281 acres of land.

Fourth Call:
THENCE up-stream along centerline of Oyster Creek following its meanders . . . to Northwest corner of said 89.281 acres of land, the place of beginning, being an 89.21 acre tract out of the David Bright League, Abstract 13, Fort Bend County, Texas.

At point X, the appellant's surveyor found a two inch iron pipe and an old corner post. According to the next call, the final boundary was to be established by going up-stream along the centerline of Oyster Creek. Point X, however, was a considerable distance west of the creek. It became apparent that the southwest corner had been established (not the southeast) and that one or more calls had been omitted in toto.

Being familiar with the land, Appellant's surveyor knew that the creek was located to the east of point X. When he looked in

this direction he noted a straight tree line running from the proximity of the old corner post and iron stake to the creek. Appellant's surveyor believed that the missing point (point C) was at the intersection of the tree line and the centerline of the creek. Neither the iron stake, the corner post, nor the tree line were mentioned in the ordinance. Appellees' surveyor testified that he did not notice the corner post, the iron stake or the tree line near point X. No photographs or other demonstrative evidence was introduced to substantiate the testimony of the appellant's witness.

Appellant's surveyor employed two methods to verify the accuracy of this missing point. First, he reversed some of the intermediate calls in the last call which he found to match the meanders of the centerline. Second, he searched the deed and map records of the county and discovered that Dr. Robinson owned only one 89.21 acre tract in the David Bright League. He then examined this deed and found the missing call which, when used, came within one foot of his point C.

 Omitted calls may not be added to an annexation ordinance by showing that the enacting body intended the call to be included. *Rose, supra.* In the *Rose* case, the members of the city council and the mayor attempted to testify as to their intent. In the instant case, the surveyor went to the deed records, which were not referred to in the ordinance or petition, to determine the city council's intent. Neither is an acceptable procedure. The description in the ordinance must be relied upon to the exclusion of extraneous records, unless referred to in the ordinance, or unless a latent ambiguity arises from extraneous facts. *City of Houston v. Harris County Eastex Oaks Water and Sewer District, supra.*

 In the instant case there are numerous errors patent in the ordinance. There is *too much extraneous information* which needs to be supplied in order to close the boundaries. After employing the appropriate rules of construction and considering the testimony of the surveyors, the trial court did not err in concluding that field

notes contained in ordinance 102 did not close. The court also correctly held that the area annexed by ordinance 116 was not adjacent to the corporate limits of the city and was therefore void.

Appellant's seventh and eighth points of error assert that the trial court erred in holding that neither ordinance had been validated by Tex.Rev.Civ.Stat.Ann. arts. 974d–12, 974d–13, 974d–19, 974d–21, 974d–22 or other general acts of the legislature.

 It is clear that the legislature is empowered to validate any act which it is empowered to authorize. *City of Waco v. City of McGregor,* 523 S.W.2d 649 (Tex. 1975). The legislation, however, must evidence a clear intention to validate an ordinance failing to comply with the traditional requirements of the municipal annexation act. In *Waco,* the court held that article 974d–12 did not validate the purported annexation of nonadjacent territory. In the instant case, the area purportedly annexed by ordinance 116 is not adjacent to the city limits because of the insufficiency of ordinance 102. The validating provision of article 974d–21 is similar to article 974d–12, and therefore, did not validate ordinance 116. Our conclusion is buttressed by another annexation ordinance, not applicable to the instant case, which expressly waives compliance with the Municipal Annexation Act. See e. g. Tex.Rev.Civ.Stat.Ann. 974d–14.

 Articles 974d–19 and 974d–22 are not applicable to the instant case because they contain clauses excluding those towns and/or cities involved in boundary dispute litigation. The effective date of both of these statutes was after the instant suit was instituted (but before ordinance 102 had been explicitly attacked).

 Articles 974d–12 and 974d–13 are not applicable to the instant case because their effective dates were prior to the city council's passage of ordinance 116.

 We further hold that ordinance 102 was not validated by any of the above cited statutes. These article do not import the

necessary information to correct the patent errors and omissions. Ordinance 102 was, and still is, insufficiently described.

 It is undisputed that most of the territory embraced by ordinance 116 is beyond the extraterritorial jurisdiction of the City of Missouri City. This is in violation of Art 970a, V.A.C.S., Municipal Annexation Act, and would render the annexation of this territory void. *City of Waco v. City of McGregor,* 523 S.W.2d 649 (Tex.1975). However, the last pleadings filed by appellees in the trial court were void of any allegations that the territory annexed by ordinance 116 was beyond the extraterritorial jurisdiction of appellant. Over proper objection by appellant, testimony was admitted during the trial concerning this, and the trial court found (1) that at all times material to the suit the extraterritorial jurisdiction of Missouri City was one-half mile from the corporate limits of Missouri City, and (2) that substantially all of the lands and premises described in ordinance 116 was located more than one-half mile from the corporate limits of Missouri City. We hold that the introduction of such testimony was improper and that this issue was not properly before the trial court or this court for consideration.

The judgment of the trial court is affirmed.

EVANS, J., dissenting.

EVANS and WALLACE, JJ., also sitting.

EVANS, Justice, dissenting.

I am unable to agree with the majority of the court that the description contained in Ordinance 102 is fatally defective and that the ordinance is, therefore, void ab initio. It was the plaintiffs' burden to establish the invalidity of the Ordinance 102, and, in my opinion, this burden was not met.

The record shows that on September 30, 1965, Dr. Hampton C. Robinson, Jr., petitioned the mayor and governing body of the city of Missouri City, Texas, to extend the city limits so as to annex a described tract of 89.281 acres in the David Bright League, Abstract 13 in Fort Bend County, Texas.

In his petition, Dr. Robinson represented that he was the owner of the 89.281 acre tract, and the evidence is undisputed that there was then recorded in the deed records of Fort Bend County, Texas a deed from Jessie Agnew to Dr. Hampton C. Robinson, Jr., conveying a tract of 89.281 acres in the David Bright League, Abstract 13, Fort Bend County, Texas, by metes and bounds as follows:

Being an 89.281 acre tract out of the David Bright League Abstract 13, Fort Bend County, Texas:

Beginning at a 1 inch iron pipe at the intersection of Oil Field Road and Thompsons Ferry Road, said pipe being at the common corner of the David Bright, William Stafford, William Little and Elijah Roark Leagues;

Thence North 89 degrees 09 minutes East along the common line of the David Bright and Elijah Roark Leagues 3,343.7 feet to a point in the Northeast right-of-way line of the Sugarland Railroad 75 foot wide right-of-way;

Thence North 37 degrees 33 minutes West along said Railroad right-of-way 680.5 feet to a 1 inch iron pipe set for corner and the place of beginning of the herein described tract;

Thence North 88 degrees 42 minutes East at 1809.5 feet pass a 2 inch iron pipe found on the West bank of Oyster Creek and continuing for a total distance of 2,021.3 feet to a point in the centerline of Oyster Creek for a corner;

Thence up-stream and along the centerline of Oyster Creek following its meanders to-wit:

North 59 degrees 02 minutes West 716.2 feet; North 77 degrees 41 minutes West 190.0 feet; South 88 degrees 09 minutes West 680.0 feet; North 85 degrees 06 minutes West 200.0 feet; North 50 degrees 49 minutes West 255.0 feet; North 19 degrees 49 minutes West 337.0 feet; North 22 degrees 41 minutes East 224.7 feet; North 49 degrees 11 minutes East 1045.0 feet; North 35 degrees 41 minutes East 200.0

feet; North 09 degrees East 200.0 feet; North 09 degrees 37 minutes East 380.0 feet; North 04 degrees 53 minutes West 200.0 feet; North 54 degrees 53 minutes West 235.0 feet; South 87 degrees 37 minutes West 140.0 feet; South 67 degrees 37 minutes West 220.0 feet; South 53 degrees 07 minutes West 1,004.0 feet; South 73 degrees 07 minutes West 330.0 feet; South 86 degrees 37 minutes West 202.5 feet; North 79 degrees 23 minutes West 375.0 feet; North 70 degrees 23 minutes West 120.0 feet; and North 43 degrees 51 minutes West 119.8 feet.

Thence South 52 degrees 27 minutes West 200.7 feet to a 1 inch iron pipe set in the Northeast right-of-way line of the Sugarland Railroad for a corner;

Thence South 37 degrees 33 minutes East 2,476.7 feet along the northeast right-of-way line of said railroad to the place of beginning and containing 89.281 acres of land.

A sketch indicating the corners of the 89.281 acres in question is set forth below:

Jessie Agnew to Hampton C. Robinson, Jr.
89.281 Ac.

It is also undisputed that at the time of the filing of the petition for annexation and the enactment of Ordinance 102, Dr. Hampton C. Robinson, Jr., only owned the tract of 89.281 acres in the David Bright League, Abstract 13 in Fort Bend County, Texas.

On October, 19, 1965, the City Council of the city of Missouri City, Texas, enacted Ordinance 102, annexing to the city of Missouri City a tract of 89.281 acres described by the same metes and bounds field notes as were contained in the petition for annexation. The field note description contained in the petition and ordinance is similar to the description contained in the deed to Dr. Robinson; however, the field notes in the petition and ordinance begin at the northwest corner of the tract (point B on the sketch) instead of the Southwest corner (point X) and there is omitted from the description in the petition and ordinance a call for the south line of the tract (point X to point C). It is principally on the basis of this omitted call that the plaintiffs contend that the field note description in Ordinance 102 does not close and that the boundaries of the 89.281 acre tract cannot, therefore, be located on the ground.

Mr. Henry Steinkamp, a registered professional engineer and surveyor, was called as an expert witness by the city of Missouri City. Mr. Steinkamp testified that he had surveyed about 50% of the tracts of land in Fort Bend County over the past 22 years and that he was familiar with the tract of land in question. He had conducted an actual ground survey of the tract and located its boundaries on the ground. It was his professional opinion that the boundaries of the tract closed.

Mr. Steinkamp testified that he was familiar with the location of the 89.281 acre tract and that he had determined by checking the deed records and ownership maps in his office that there was only one 89.281 acre tract of land owned by Dr. Robinson in the David Bright League. A comparison of the description contained in the deed to Dr. Robinson with the description contained in the ordinance showed that the call for course and distance from point X to point C had been omitted from the ordinance description.

In making his ground survey, Mr. Steinkamp first located the northwest corner of the tract at point B, finding a one inch iron pipe in the east line of the railroad right-of-way called for at that location. From that point he reversed the course called for in the field note description and measured 200.7 feet to establish point A.

Mr. Steinkamp then located the southwest corner of the tract at point X by running the called course (south 37 degrees 33 minutes east) along the east line of the railroad right-of-way the called distance of 2476.7 feet, at which point he found a one inch iron pipe (called for in the deed to Robinson beside an "old corner post."

From point X, Mr. Steinkamp observed a tree line "that's been there for many, many years, large trees, just a straight line down toward . . . the creek." Proceeding down this old tree line until he intersected Oyster Creek, he located point C "within a foot or so" of the called distance reflected in the deed to Dr. Robinson. From point C, Mr. Steinkamp traversed the meanders of Oyster Creek to point A, noting in several instances, that the ordinance description had, in error, omitted or reversed certain calls for course and distance.

In order to confirm his ground location of the southwest corner of the tract at point C, Mr. Steinkamp made an overlay of the first five or six meanders of Oyster Creek running northerly from point C, and by comparing this overlay with a map on which he had plotted the calls for courses and distances contained in the ordinance description, he found a precise match between the angles and distances of the ground meanders and the courses and distances called for in the description.

Mr. Steinkamp testified that based upon his ground survey and his comparison of the descriptions contained in the deed to Dr. Robinson and in this ordinance, it was his professional opinion that the tract described in the deed was the same land as that described in the ordinance.

Where a descriptive call is inadvertently omitted from an instrument in a party's chain of title, and from data contained within the instrument itself or by reference to other admissible evidence, a surveyor may locate the property on the ground, the defect does not render the instrument void for want of certainty. *Montgomery v. Carlton*, 56 Tex. 431, 433 (1882). If, at the time the surveyor is locating the described tract on the ground, an ambiguity is found which did not appear on the face of the instrument, resort may be had to extrinsic evidence, even parol evidence, to assist in locating the tract in accordance with the intention of the parties. *Humble Oil & Refining Co. v. Ellison*, 134 Tex. 140, 132 S.W.2d 395, 398 (1939).

Reading the ordinance description in question, the last call for the center line of Oyster Creek would appear to be located at point X, at its intersection with the north right-of-way line of the railroad. Thus, insofar as indicated on the face of the ordinance, no ambiguity is shown, and it is only when the description is applied to the ground that the defect becomes apparent. It was, therefore, entirely proper for the surveyor to consider evidence extraneous to that shown on the face of the instrument in order to identify the ground location of the tract.

In locating the boundaries of the tract in question, it was appropriate for the surveyor to consider not only the ground objects called for in the field notes but also other ground markings which tended to support a reasonable interpretation of the field note description. *Brateman v. Upper Channel Site Co.*, 378 S.W.2d 882 (Tex.Civ.App.— Houston, 1964, writ ref'd n. r. e.). Where many years have passed and one or more of the objects called for in the original field notes have disappeared, other evidence may be considered which assists in the location of the footsteps of the original surveyor and which tends to show the parties' interpretation of their ownership. *Angelina County Lumber Co. v. McKnight*, 265 S.W.2d 246 (Tex.Civ.App.—Waco 1954, writ ref'd n. r. e.).

It was also proper to look to the description contained in the deed to Dr. Robinson to gain information with respect to the true location of the tract on the ground. The petition for annexation made express reference to Dr. Robinson's ownership, and it was also shown that he only owned one tract of land in the survey answering the description contained in the petition and ordinance. The statement of ownership in the ordinance proceedings constituted a suf-

ficient basis for investigation of the deed records to identify Dr. Robinson's ownership within the survey. *Pickett v. Bishop*, 148 Tex. 207, 223 S.W.2d 222, 223 (Tex. 1949).

The plaintiffs called Mr. William Miller, a state licensed land surveyor and registered public surveyor, to testify on their behalf. Mr. Miller testified that he had reviewed the field notes contained in the ordinance, but he had not made a ground survey of the tract of land. He had been out to the property, made a "ground observation", and had "looked around" for the corners called for in the ordinance. On the basis of his review of the description contained in the ordinance, he was unable to obtain a closure in the boundaries and, therefore, he was unable to locate the tract on the ground.

Mr. Miller testified that he had been unable to find the iron pipe at the northwest corner of the tract (point B), and he had some difficulty locating points A and B because of the discrepancy in the declination contained in the first two calls of the ordinance description. He had made no effort to locate the intersection of the northeast line of the railroad right-of-way and the city limits of Missouri City.

Mr. Miller apparently accepted Mr. Steinkamp's point B as the appropriate location of the northeast corner of the tract (at least he made no suggestion of an alternate location), and he conceded that he would have no difficulty locating the northeast corner at point A and the southwest corner at point X by their called course and distance from point B. Thus, Mr. Miller's testimony did not in any material aspect contradict Mr. Steinkamp's location of points A, B and X as determined from his ground survey.

In order to locate the southwest corner of the tract, Mr. Miller tried reversing the meander calls of the ordinance description and made an office location of those calls on his plat. He did not make a ground survey, and conceded that his map was "just a geographical description of the location east of the railroad." He stated that he had been on the ground near point X, but had not made any particular effort to look for the iron pipe called for in the deed description. Neither did he notice the tree line extending in a straight line from point X eastward to Oyster Creek, although he testified that if he had observed such a tree line, it would have been significant to him as a surveyor.

Q Mr. Miller, is it not a fact that there's an old tree line extending from Point X over to Point C in a straight line?

A Mr. Olson, that I don't know because in looking at Point C and X, we see on that map, I have to say again that that was an interpretation of the figures and facts and the field notes here and not the results of an on-the-ground . . . I didn't make a ground survey, I didn't go on the ground to try to ascertain or do retracings you might say.

Q Right, sir. Well, you obviously located one method or another as what was designated here as Point B?

A Uh-huh.

Q And you know by looking at the ordinance itself, you have a call down the railroad right-of-way line of 2,476-feet. Did you make any measurements or approximations?

A Approximations or just through what I would call an investigation. I didn't go out and measure that distance there to down there with a tape or surveyor's chain. I just approximated about where it was within the area. I thought possibly that point might be over further, but I don't have any way of knowing what was along the line that connected the two points.

Q And yet that approximation of that distance in the railroad right-of-way line, if there was a tree line extending in a straight direction or to Oyster Creek, you didn't notice it?

A I didn't notice it.

Q If there was a well-defined, straight defined tree line, would that have a significance to you as a surveyor?

A Oh, yes.

Mr. Miller admitted that in making his review of the description contained in Ordinance 102, he had used only the ordinance itself, and he did not look at the petition for annexation or check the deed records. He testified that if he had been furnished the petition showing that Dr. Robinson had represented himself to be the owner of the tract, he would logically have gone to the deed records to gain more information to assist in locating the property.

Thus, it is apparent from the record that Mr. Williams' surveying conclusions were based principally upon an "office survey", using only the description contained in the ordinance. His ground observations were made only to see "if anything was obvious which might be representative of any type of corner", and he made no effort to locate called courses on the ground or to measure called distances. He only platted the ordinance field notes by a computer to see if they would close, and his maps were merely graphic representations of his office interpretations.

The testimony of the surveyor Steinkamp constitutes the only competent evidence as to the proper ground location of the land in question. Mr. Steinkamp's undisputed testimony shows that he actually found the ground objects called for in the ordinance and deed description for the northwest corner (point B) and in the deed description for the southwest corner (point X) and that such objects were located at their called course and distance. At the southwest corner (point X) he also found an "old corner post" and an old tree line extending to Oyster Creek at almost identical course and distance called for in the deed to Dr. Robinson. Having located point C at the intersection of such line with Oyster Creek, he confirmed that location by making an overlay of the creek's meanders northward from point C and then comparing that data with the platted meander calls from the field notes description.

The record does not contain any evidence which contradicts in any material way the testimony of Mr. Steinkamp as to the ground objects he found and the measurements that he made. Nor can it be said that his conclusions with respect to the location of the corners of the tract were called into question by any competent evidence. The testimony of the plaintiffs' surveyor, Mr. Miller, shows that his conclusions were based almost entirely upon an office platting of the ordinance field notes and that he worked without benefit of the data and ground information obtained by Mr. Steinkamp in making his survey. Thus, since no contrary evidence was offered with respect to Mr. Steinkamp's location and there being no inconsistency in his testimony which raised any reasonable suspicion as to the validity of his testimony, his conclusions with respect to the location of the boundaries of the tract in question must be deemed conclusive. *Texas & Pacific Railway Co. v. Moore*, 329 S.W.2d 293, 299 (Tex.Civ.App.—El Paso 1959, writ ref'd n. r. e.): *Kamp v. Hargis Building Co.*, 238 S.W.2d 277, 282 (Tex.Civ.App.—Galveston 1951, writ ref'd n. r. e.).

In *Teal v. Powell Lumber Co.*, 262 S.W.2d 223, 239 (Tex.Civ.App.—Beaumont 1953, no writ) the appellant's surveying witness gave uncontradicted testimony as to ground objects he had found and measurements he had made, and based thereon, he stated his opinion as to the location of the corners of the survey in question. The trial court, in a non-jury trial, rejected the surveyor's conclusion, and on appeal the appellees contended that the trial court's presumed findings should be supported on the basis that it was not required to accept the expert witness' testimony and could have found "that the witness did not bona fide entertain the opinions which he expressed . . ." Reversing the trial court's judgment, the Beaumont Court of Civil Appeals held that the surveyor's testimony established the location of the survey line, as a matter of law, and that under the state of the record, the finder of fact did not have the right to disregard the witness' testimony.

Although opinion testimony of an expert witness, even though not contradicted, may ordinarily be disregarded by the trier of facts if more than one possible conclusion

can be drawn therefrom, such testimony is to be given conclusive effect where the nature of the subject matter is such that the fact finder must be guided solely by the expert's opinion and the testimony is credible and free from contradiction and inconsistency. *Exxon Corp. v. West*, 543 S.W.2d 667, 672 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n. r. e.).

As a general rule, descriptions of municipal boundaries are not construed with the same strictness as boundaries in grants or contracts. *City of Houston v. Harris County Eastex Oaks W & S Dist.*, 438 S.W.2d 941 (Tex.Civ.App.—Houston [1st Dist.] 1969, writ ref'd n. r. e.); *Lower Nueces River Water Supply Dist. v. Cartwright*, 274 S.W.2d 199, 204 (Tex.Civ.App.—San Antonio 1954, writ ref'd n. r. e.). *State v. City of Fort Worth*, 339 S.W.2d 707, 709 (Tex. Civ.App.—Ft. Worth 1960, writ ref'd n. r. e.). However, even if the ordinance description is tested in the same manner as a conveyance, it is sufficiently definite under the evidence presented.

In *Ehlers v. Delhi-Taylor Oil Corporation*, 350 S.W.2d 567 (1961) no writ, Justice Barrow speaking for the San Antonio Court of Civil Appeals stated:

> ". . . the rule in Texas is that a deed is not void for uncertainty of description unless on its face the description cannot, by extrinsic evidence, be made to apply to any definite land. Where the deed affords some data susceptible of being connected, by parol testimony, with some definite land, the description is in law sufficient . . ." 350 S.W.2d 573.

The whole of the ordinance provisions in question should be reasonably construed in order to carry into effect the intent of the enacting body. *State v. City of Fort Worth*, supra; *State v. City of La Porte*, 386 S.W.2d 782 (Tex.1965). A reasonable construction of the description contained in the ordinance does not require the changing of any line in the original field notes nor does it create any additional corners. The omission of a call necessary to make the description close does not render the de-

scription void since the ordinance proceedings, considered in their entirety, furnish the data by which the land described can be definitely located on the ground. *Grisham v. Tate*, 35 S.W.2d 264, 266 (Tex.Civ.App.— Waco 1931, writ dism'd).

It was the plaintiffs' burden to establish that the boundaries of the land annexed by Ordinance 102 were "wholly beyond possibility of ascertainment". *Lower Nueces River Water Supply Dist. v. Cartwright*, supra, at p. 205. In my opinion, the plaintiffs failed to meet this burden by legally sufficient evidence.

I would reverse the judgment of the trial court and remand the cause for a determination of the questions remaining as to whether Ordinance 116 is void as being beyond the extra-territorial jurisdiction of the city of Missouri City, Texas.