NO









NO. 12-08-00329-CV

 

                         IN
THE COURT OF APPEALS

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

 

CHARLES R. WIGGINS and,

R. ZACHARY TONROY,                                   '     APPEAL
FROM THE 4TH

APPELLANTS

 

V.                                                                         '     JUDICIAL
DISTRICT COURT OF

 

GLEN S. CADE,                                                '     RUSK
COUNTY, TEXAS

APPELLEE

 





                                                     OPINION
ON REHEARING

            Glen
S. Cade has filed a motion for rehearing, which is overruled.  We withdraw our
opinion of January 29, 2010 and substitute the following opinion in its place.

            Both
Appellants, Charles R. Wiggins and R. Zachary Tonroy, and Appellee, Glen S.
Cade, claim title to the same 1/64 nonparticipating royalty interest in the oil
and gas produced and saved from a gas well in Rusk County.  Cade filed a
petition for declaratory judgment and to quiet title.  By summary judgment, the
trial court determined that Cade is the owner.  Wiggins and Tonroy contend in
two issues that the trial court erred.  We reverse and remand for further
proceedings.

Background 

On
September 28, 2004, Dale Resources (East Texas), L.L.C. (the “developer”) filed
an application for appointment of a receiver for the 1/32 nonparticipating
royalty interest jointly owned by B.F. Crook and Mildred Andrene Crook
Higginbotham Goad because it could not find Crook and Goad.[1] 
In an “Agreed Order Determining Ownership of Mineral Interest Under Judgment
Approved by the Court and Distribution of Funds Held by the Registry of the
Court for Glen Cade,” signed February 1, 2006, the court found that William
Thomas Crook (“W.T. Crook”) and Edward Howard Stewart had inherited Goad’s 1/64
interest.  Further, the court found that Stewart’s interest had been inherited
by David E. Rinehart, and then W.T. Crook’s and Rinehart’s interest had been
transferred to Cade.  The order was signed and agreed as to form by the
receiver and the attorneys for Cade, Goad, and the developer.

The
record shows further that between the time the developer filed its application
for a receiver and the time the court entered its order determining ownership, W.T.
Crook and Rinehart had executed two sets of deeds, first to Wiggins (royalty
deeds) and subsequently to Cade (mineral deeds) as shown below:

 

                                                                                                            Date
of                                  Date Deed 

Grantor                                            Grantee                                 Deed                                       Recorded

 

William
Thomas Crook                  Charles Wiggins                   10/14/04                                               10/20/04

David
Rinehart                                                Charles Wiggins                   11/16/04                                               11/18/04

William
Thomas Crook                  Glen Cade                             1/20/06                                  1/23/06

David
Rinehart                                                Glen Cade                             1/23/06                                  1/24/06

 

 

The January 20,
2006 deed from W.T. Crook to Cade stated that the “[e]ffective date of this Deed
is 1-20-04.”  The deed from Rinehart to Cade, dated January 23, 2006, stated
that the “[e]ffective date of this Deed is 2-20-04.”

Then,
in a proceeding after the receivership, Cade sought a declaratory judgment and
to quiet title asserting that Wiggins and Tonroy did not have a valid claim to
the nonparticipating royalty interest.[2] 
Cade later filed a motion for summary judgment based on two legal theories. 
First, he claimed that the royalty deeds from Crook and Rinehart to Wiggins
violated the statute of frauds because they contained an insufficient legal description
and were therefore void.  Second, Cade claimed that title to the 1/64
nonparticipating royalty interest had been fully litigated in the receivership
action and that the doctrine of collateral estoppel precluded it from being
litigated again.  The trial court granted summary judgment for Cade without
specifying which legal theory provided the basis for its ruling.  Wiggins and
Tonroy timely filed this appeal.  

 

Standard of
Review

We
review the trial court’s decision to grant a summary judgment de novo.  Tex.
Mun. Power Agency v. Pub. Util. Comm’n, 253 S.W.3d 184, 192 (Tex.
2007).  The movant for summary judgment has the burden of showing that there is
no genuine issue of material fact and that it is entitled to judgment as a
matter of law.  Tex. R. Civ. P.
166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex.
1985).  To prevail on a summary judgment, a plaintiff must conclusively prove
all elements of his cause of action as a matter of law.  See MMP, Ltd. v.
Jones, 710 S.W.2d 59, 60 (Tex. 1986).  Once the movant has established
a right to summary judgment, the nonmovant has the burden to respond to the
motion and present to the trial court any issues that would preclude summary
judgment.  See City of Houston v. Clear Creek Basin Auth., 589
S.W.2d 671, 678-79 (Tex. 1979).  An appellate court reviewing a summary
judgment must consider all the evidence in the light most favorable to the
nonmovant, indulging every reasonable inference in favor of the nonmovant and
resolving any doubts against the motion.  Goodyear Tire & Rubber Co.
v. Mayes, 236 S.W.3d 754, 756 (Tex. 2007).  If the trial court’s order
does not specify the grounds on which it granted summary judgment, we affirm if
any of the grounds specified in the motion are meritorious.  See Provident
Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex.
2003).

 

Statute of Frauds

            In
their first issue, Wiggins and Tonroy contend that the trial court erred in
granting summary judgment based on the statute of frauds.  They assert that there
is a question of fact regarding whether the description in their royalty deeds is
legally sufficient.  

Summary
Judgment Evidence

            The
royalty deeds from Crook and Rinehart, in October and November of 2004
respectively, contained the same legal description as follows:

BEGINNING at an offset corner, same being the
northwest corner of a tract of 45 acres of land formerly owned by Mrs. Kate
Crook;

THENCE South with East boundary line of the Seelbach
tract 335 varas to southeast corner of said Seelbach tract on North boundary
line of J.H. White 119 acre tract;

THENCE East with north line of said White tract 268
varas to Northeast corner of same, a stake for corner;

THENCE South 10 deg. 1160 varas to corner on North
boundary line of G.W. Coats 150 acre tract to the northeast corner of same;

THENCE North 3 deg. West 1031 varas to a corner at a
fence, same being the West boundary line of land owned by Tipps and Rogers;

THENCE West with an old fence 110 varas to corner at
an old fence;

THENCE North 10 deg. West with an old fence 487 varas
to the Northeast corner of Mrs. Kate Crook’s 45 acre tract;

THENCE West with the North boundary line of said 45
acre tract, 756 varas to the place of beginning, containing 169.31 acres of
land, more or less.  

 

            As
part of his summary judgment evidence, Cade offered the affidavit of R.E. (Bob)
Peyton, Jr., a registered professional land surveyor who had twenty-four years
of experience in Texas.  Peyton stated that he could not locate the property on
the ground with reasonable certainty based on the legal description in the
deeds because it contained neither the name of the survey or the abstract
number in which the property was situated.

            Wiggins
and Tonroy filed an affidavit by Donald R. “Tex” Tonroy, a petroleum landman,
in response to Cade’s summary judgment motion.  In his affidavit, Tonroy stated
that he had been a petroleum landman for more than thirty years in Texas and
had been licensed to practice law in Texas for fourteen years.  During that
time, he examined public records for the purpose of determining mineral,
royalty, and working interest ownership.  He stated that by using the
description in the two royalty deeds and by examining the public records of the
county clerk of Rusk County, Texas, he determined that the forty-five acres
formerly owned by Mrs. Kate Crook was located in the M.V. Peña Survey, A-27, of
Rusk County, Texas.  He stated that he was able to determine this information
from a search for Kate Crook in the grantor/grantee indices of the Rusk County
clerk’s office.  He stated that this was the only forty-five acre tract that
Kate Crook ever owned in Rusk County and that therefore he was able to locate
the land described in the two royalty deeds with reasonable certainty.  

Applicable
Law

The
sufficiency of the legal description in any instrument transferring a property
interest is a question of law and subject to a de novo review.  Dixon v.
Amoco Prod. Co., 150 S.W.3d 191, 194 (Tex. App. – Tyler 2004, pet.
denied).  An instrument conveying land must contain a sufficient legal
description or the instrument is void under the statute of frauds.  Id. 
A property description is sufficient if the writing furnishes within itself or
by reference to some other writing, the means or data by which the particular
land to be conveyed may be identified with reasonable certainty.  AIC
Mgmt. v. Crews, 246 S.W.3d 640, 645 (Tex. 2008).  A
recital of ownership in a deed may be used as an element of description and may
serve as a means, together with some other element, of identifying the land
with reasonable certainty.  Broaddus v. Grout, 152
Tex. 398, 402, 258 S.W.2d 308, 310 (1953).  Where the deed contains some data
susceptible of being connected, by parol testimony, with some definite land,
the description is in law sufficient.  Ehlers v. Delhi-Taylor Oil Corp.,
350 S.W.2d 567, 573 (Tex. Civ. App. – San Antonio 1961, no writ.).  A
deed is not void for uncertainty unless on its face the description cannot, by
extrinsic evidence, be made to apply to any definite land.  Jamison v. City
of Pearland, 489 S.W.2d 636, 641 (Tex. Civ. App. – Houston
[1st Dist.] 1972, writ ref’d n.r.e.).  If enough information appears in the
description so that a party familiar with the locality can identify the
premises with reasonable certainty, it will be sufficient.  Gates v.
Asher, 154 Tex. 538, 541, 280 S.W.2d 247, 248-49 (1955). 


Analysis 

            Peyton’s
affidavit stated the legal description was insufficient to locate the property
on the ground because it did not contain the survey name and abstract number.  Kate
Crook’s name appeared in the legal description as the former owner of a
forty-five acre tract bordering the land at issue.  Tonroy showed in his
affidavit that by searching the grantor/grantee indices located in the office
of the Rusk County clerk for the name of Kate Crook, he found documents
identifying the subject property’s survey name and abstract number.  With this
data, he was then able to identify the land described in the two royalty deeds
from Crook and Rinehart to Wiggins with reasonable certainty.

            Cade
contends that Tonroy’s affidavit was not sufficient evidence to defeat his
motion for summary judgment.  He asserts that a deed must furnish within
itself, or by reference to some other existing writing, the means or data by
which the land to be conveyed may be identified with reasonable certainty.  He
argues that the deeds here do neither.  He further argues that the generic
reference to Kate Crook’s land cannot be used to identify the land at issue. 
We disagree.  An individual can use parol evidence to connect data described in
the instrument, such as the name of a land owner, to establish the sufficiency
of a legal description.  See Ehlers, at 568-573. 
This is just what the Tonroy affidavit explained.  We hold that Cade did not
meet his burden to establish as a matter of law the insufficiency of the legal
description in the two royalty deeds of October and November 2004 from Crook
and Rinehart to Wiggins.  See Jones, 710 S.W.2d at 60.  We
sustain Wiggins and Tonroy’s first issue.

 

Collateral Estoppel 

            In their second issue,
Wiggins and Tonroy assert that the trial court erred in granting summary
judgment for Cade on the basis of collateral estoppel.  They contend that Cade
did not establish all of the necessary elements of collateral estoppel as a
matter of law, and he is therefore not entitled to summary judgment on this
ground.  We agree.

 

Summary
Judgment Evidence

            In support
of his motion for summary judgment, Cade presented the 2004 application for
appointment of receiver; an agreed order determining ownership of the nonparticipating
royalty interest signed February 1, 2006; the two deeds from W.T. Crook, one royalty
deed to Wiggins and one mineral deed to Cade; and the two deeds from Rinehart,
one royalty deed to Wiggins and one mineral deed to Cade.  The application for
receivership recited that it had been filed by the developer so that it could
produce and develop the minerals in the area.  The developer requested only the
following powers for the receiver:

 

1)      
To negotiate, make, and enter into
a ratification of oil and gas leases and mining contracts on the interest.

 

            The
agreed order determining ownership of the nonparticipating royalty interest explains
that W.T. Crook and Rinehart inherited their interests through Goad and then
makes the following one sentence declaration:

 

The court finds that William Thomas Crook and David E.
Rinehart have transferred all of their respective interests to Glen S. Cade,
Individually, such that the ownership of Mildred Andrene Crook Higginbotham
Goad’s complete interest is now vested in Glen S. Cade, Individually.

 

The receiver and
the attorneys for Goad, Cade, and the developer agreed to the order’s form.

Applicable
Law –Collateral Estoppel 

            The
doctrine of collateral estoppel precludes relitigation of ultimate issues of
fact actually litigated and essential to the judgment in a prior suit.  Getty
Oil Co. v. Ins. Co. of N. Am., 845 S.W.2d 794, 801 (Tex.
1992).  For an issue to be precluded by prior litigation, it must be shown that
(1) the facts sought to be litigated in the second action were fully and fairly
litigated in the first action; (2) those facts were essential to the judgment
in the first action; (3) the parties were cast as adversaries in the first
action; and (4) the party against whom the doctrine is asserted must have been
a party or in privity with a party in the first suit.  Sysco Food Servs.,
Inc. v. Trapnell, 890 S.W.2d 796, 801-02 (Tex. 1994).  

            With
respect to the first element, full and fair litigation in the first action, we
must consider the following factors: whether the parties were fully heard,
whether the court supported its decision with a reasoned opinion, and whether
the decision was subject to appeal or was in fact reviewed on appeal.  Mower
v. Boyer, 811 S.W.2d 560, 562 (Tex. 1991).  Further, a
party relying upon collateral estoppel must introduce into evidence the prior
judgment and pleadings from the prior suit or the doctrine of collateral
estoppel is not applicable in the second proceeding.  Traweek v. Larkin,
708 S.W.2d 942, 945 (Tex. App. – Tyler 1986, writ ref’d n.r.e.). 

Analysis 

            To
determine whether there was a full and fair litigation of the title issue
during the receivership action, we look to the summary judgment evidence.  We
note that the receiver’s only powers, as requested in the application to begin
the receivership, were to make leases and mining contracts.  As shown by the
application for receivership, the developer wanted only to develop the minerals
in the area.  There is no document in the summary judgment evidence showing
that the receiver had requested or been granted any authority to litigate
competing title issues during the receivership.  The attorney for Goad, and by
extension W.T. Crook and Rinehart, had no recognizable interest in litigating
these title interests.  There is no summary judgment evidence showing that W.T.
Crook and Rinehart, who received consideration from two different individuals
for the 1/64 nonparticipating royalty interest, attempted to litigate the title
issue during the receivership.  Cade, in his pleadings for declaratory
judgment, stated that he received notice of an adverse claim to the real
property on August 28, 2007, more than a year and a half after the agreed order
determining ownership was signed.  Thus, the adverse claim was not brought to
Cade’s attention, or raised in the trial court, before the agreed order was
signed.

            The
agreed order, the only other court document in the summary judgment record,
includes no recitation of any adversarial relationships regarding the competing
title interest in the 1/64 nonparticipating royalty interest.  There is no
evidence in the summary judgment record that Wiggins and Tonroy ever made an
appearance in the receivership or had notice of the motion that the agreed
order approved.  There is nothing in the summary judgment record to show that
there was any kind of adversarial relationship that would lead to full and fair
litigation of the title issue during the receivership.  Thus, the record does
not show that the issue of the validity of the competing deeds was fully and
fairly litigated.  See Mower, 811 S.W.2d at 562.  With only
agreeable parties before it, the trial court had no reason to deliver a
reasoned opinion or judgment on the title of the 1/64 nonparticipating royalty
interest.  Further, the record does not indicate whether the agreed order was
reviewed on appeal.  See id.  We hold that the
summary judgment record before us does not establish the first element required
for collateral estoppel, that the facts sought to be litigated in the second
action were fully and fairly litigated in the first action.  See Trapnell,
890 S.W.2d at 801.  Accordingly, Cade did not show his entitlement to summary
judgment as a matter of law on the basis of collateral estoppel, and the trial
court could not properly grant Cade’s motion for summary judgment on that
ground.   See Jones, 710 S.W.2d at 60.  We sustain
Wiggins and Tonroy’s second issue.

 

Disposition 

            Having
determined that the trial court erred in granting summary judgment because
neither of Cade’s asserted grounds, the statute of frauds and collateral
estoppel, support summary judgment, we reverse the trial court’s
judgment and remand the cause for further proceedings consistent
with this opinion.

 

                                                                                                    
JAMES T. WORTHEN    

                                                                                                                
Chief Justice

 

 

 

 

Opinion delivered May 5, 2010.

Panel consisted of
Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

(PUBLISH)









[1]
It is undisputed that the controversy here does not extend to the 1/64 interest
of B.F. Crook.  Therefore, B.F. Crook’s interest will not be discussed
further.  

 





                [2]
Wiggins had conveyed part of his interest to Tonroy.